CHARLES CARINO *v.* JOHN WATSON

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Submitted July 22—decision released August 3, 1976

*Robert E. Beach, Jr.,* assistant state's attorney, in support of the motion.

*Hubert J. Santos,* in opposition.

HOUSE, C. J. This matter came to this court on a motion for review and to reverse an order of the Superior Court in Hartford County granting bail in the amount of $10,000 to the plaintiff, Charles Carino. The named defendant, John Watson, is the commanding officer of the detective division of

the Connecticut state police and who, at the commencement of the proceedings, held the plaintiff in his custody. Carino is wanted by the state of New Jersey on a variety of criminal charges. He was arrested on unrelated charges in East Hartford on June 6, 1975. He was then charged with being a fugitive from justice, but, before the governor could sign the extradition arrest warrant, he challenged in the federal district court for Connecticut the validity of the Uniform Criminal Extradition Act (General Statutes §§ 54-157 through 54-185). That court temporarily enjoined the signing of the warrant, and a three-judge panel was convened. That panel in an unreported decision upheld the validity of the act and dissolved the injunction. The plaintiff appealed the decision to the United States Supreme Court which summarily ruled against his claims on June 7, 1976. *Carino* v. *Grasso,* 426 U.S. 913, 96 S. Ct. 2617, 49 L. Ed. 2d 368.

Following dissolution of the injunction, the governor signed the extradition arrest warrant. The plaintiff surrendered himself on April 8, 1976, and, as permitted by § 54-166, immediately petitioned the Superior Court for a writ of habeas corpus, challenging the legality of his arrest under that arrest warrant. That same day, the Superior Court set bond and gave the state permission to seek review of its order in the event that such permission should be deemed to be necessary—a question which, under the circumstances, need not be decided in the present proceedings.

The motion for review of the order fixing bail is properly before this court. Practice Book § 694. The state does not question the reasonableness of the amount of the bail bond set but claims that, after the governor has signed an extradition war-

rant and even though the fugitive has petitioned for a writ of habeas corpus, the court is powerless to admit him to bail.

The Uniform Criminal Extradition Act expressly provides (§ 54-172) that a judge may admit to bail a person arrested as a fugitive from another state pending issuance of the governor's warrant in an extradition proceeding, unless the offense charged is punishable by death or life imprisonment under the law of the demanding state.[1] It is significantly silent, however, concerning the authority of a court or judge to admit a fugitive to bail after the governor's warrant has been signed. See *Allen* v. *Wild*, 249 Iowa 255, 259, 86 N.W.2d 839.

The plaintiff, citing *Winnick* v. *Reilly*, 100 Conn. 291, 123 A.2d 440, contends that the Superior Court in the exercise of its common-law powers may, in a habeas corpus proceeding arising from a prisoner's arrest on a governor's extradition warrant, admit that prisoner to bail. The *Winnick* case concerned a plaintiff's right to bail pending a decision on his appeal from the dismissal of a writ of habeas corpus issued on his challenge to an extradition warrant signed by the governor. This court held that the trial court did have the power to admit the plaintiff to bail. Speaking through *Wheeler, C. J.,* this court quoted with approval (p. 297) from the opinion of *Hamersley, J.,* in *State* v. *Vaughan,* 71 Conn. 457, 460–61, 42 A. 640: "The power to

[1] "[General Statutes] Sec. 54-172. ALLOWANCE AND CONDITIONS OF BAIL BOND. Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, such a judge in this state may admit the person arrested to bail by bond, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond, and for his surrender, to be arrested upon the warrant of the governor of this state."

admit to bail after conviction is not a statutory but a common-law power; the constitutional provision does not apply; bail is then a matter of absolute discretion, to be exercised by the court, however, with great caution, and rarely to be allowed when the crime is serious. But the *power* to admit to bail is inherent in the court so long as the prisoner is in its custody; that is, until he is taken in execution. . . . But it necessarily follows . . . that where, as in this State, a review of the judgment by a Court of Errors is a matter of right, there must be power in the courts to stay execution and, if the special circumstances of the case justify it, to admit to bail." Noting that the Connecticut statutes then in effect provided for the release on bail of a fugitive from justice apprehended in this state, pending the institution and consummation of requisition proceedings, and also provided that the demand by the governor of another state shall not be complied with by the delivery of the fugitive from this state's justice until he has had an opportunity to apply for a writ of habeas corpus, the court in *Winnick* continued (p. 298): "Such a provision is an express recognition under our law of the right of the fugitive to have his cause finally determined by this court. And such right exists in the constitution of the court apart from this statute. If the right to bail after the determination of the habeas corpus proceeding in the trial court did not exist, the right of appeal would be destroyed or seriously hampered, for the period of the pendency and determination of the appeal by this court might be considerable, and in the event of the taking out of a writ of error to the United States Supreme Court, it would be still longer." It is pertinent to note that as recently as our decision in *Liistro* v.

*Robinson,* 170 Conn. 116, 123, 365 A.2d 109, this court again cited the holding in *State* v. *Vaughan,* supra, 461, to the effect that "the Superior Court possesses the common-law powers formerly exercised by the Court of King's Bench to 'admit to bail in all cases on consideration of the nature and circumstances of the case.' "

The state has attempted to distinguish *Winnick* on the grounds that when it was decided in 1924, "there was no statutory provision analogous to § 54-172, which expressly allows bond *prior* to the issuance of the governor's warrant." It is true that chapter 342, "Fugitive from Justice. Requisitions," §§ 6699 through 6712 of the 1918 Revision of the General Statutes, did not have such a provision. But a more significant fact is that it mandated an opportunity for the fugitive to apply for a writ of habeas corpus (§ 6702 in effect in 1924) and a right of appeal such as is now also provided under the provisions of the present statute, § 54-166.

We find the reasoning of the court in the *Winnick* case still cogent and compelling and the rationale all the more persuasive in the situation of the present case where a hearing on the original writ of habeas corpus is pending. We are well aware, as was the court in *Winnick* case (pp. 299-300) that "[t]he authorities, certainly in number, in this country, deny that such power exists under the common law." See 39 C.J.S., Habeas Corpus, § 115; 31 Am. Jur. 2d 943, Extradition, § 27, and annotation in 56 A.L.R.2d 668, 675, "Court's power and duty, pending determination of habeas corpus proceeding on merits, to admit petitioner to bail," supplementing annotations in 143 A.L.R. 1361 and 63 A.L.R. 1502, and cases therein cited. We also recognize the seriousness of the state's constitutional

obligation to comply with the demand of the executive authority of another state to deliver up a person who is a fugitive from the justice of that state.[2] As the court in *Winnick* observed (p. 298) in this regard: "The ground upon which the denial of the right to bail is usually based, and the ground of greatest weight, is the liability that the Governor will be unable to meet his constitutional obligation of surrendering the fugitive upon the termination of the appeal." That risk alone is sufficient to justify the caveat stated in *State* v. *Vaughan,* supra, 460–61. Although the court has the power in its discretion to admit to bail in proceedings involving interstate extradition, that discretion is "to be exercised by the court, however, with great caution, and rarely to be allowed when the crime is serious."

We conclude that the decision in *Winnick* v. *Reilly,* supra, as to the power of the trial court to admit the plaintiff to bail should be affirmed and, as that decision further stated (p. 300), "as justice is administered in our courts there is no reasonable probability that the exercise by the trial court of the right to admit a fugitive to bail pending the appeal will imperil the performance by the Governor of . . . [her] obligation under the Constitution to surrender the fugitive upon the proper demand of the Governor of another State."

The defendant's motion that this court reverse the order of the Superior Court setting bond in this case is denied.

In this opinion the other judges concurred.

---

[2] U.S. Const., art. IV § 2: "A person charged in any State with Treason, Felony or other crime who shall flee from Justice and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the Crime."