CARLOS LORENZI GUADALUPE *v.* COMMISSIONER
OF CORRECTION
(AC 20172)

Landau, Spear and Dranginis, Js.

Argued March 20, 2001—officially released February 26, 2002

*Felix Esposito*, for the appellant (petitioner).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (respondent).

DRANGINIS, J. The petitioner, Carlos Lorenzi Guadalupe, appeals from the judgment of the habeas court denying his petition for writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) concluded that his defense counsel was effective in representing him, (2) concluded that his plea of guilty was knowing and voluntary, and (3) denied his motion to set conditions of release. We affirm the judgment of the habeas court.

The facts underlying the petitioner's arrest and subsequent plea are as follows. In October, 1994, the petitioner was arrested pursuant to an arrest warrant in connection with a shooting that occurred at a bar in Bridgeport in which the victim was injured. Searches of the petitioner, his vehicle and his residences led to the discovery of narcotics and a firearm. The petitioner was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and three counts of possession of narcotics with intent to sell in violation of General Statutes § 21a-277. The petitioner was also charged in federal court with possession of a firearm by a felon as a result of the incident.[1]

Attorney Dante R. Gallucci was appointed to represent the petitioner on the state charges. The petitioner faced a maximum penalty of life in prison. Initially, the plea bargaining process included discussions that the petitioner could serve a twenty year or thirty year sentence. Neither a twenty year nor a thirty year sentence, however, was acceptable to the petitioner at that time.

On August 10, 1995, attorney Michael O. Sheehan was appointed to represent the petitioner on the federal charge. Gallucci learned of the pending federal charge on or about September 11, 1995. Sheehan informed

---

[1] The state also nolled a charge relating to possession of the handgun.

Gallucci that because of the federal sentencing guidelines, the petitioner likely would be sentenced to ten years for the federal charge if he pleaded guilty or was found guilty after trial. With the likelihood of incarceration for the federal charge, Gallucci and the petitioner became more willing to plea bargain.

Sheehan and Gallucci began considering the possibility that the federal and state sentences could run concurrently. Both attorneys and the state's attorney understood that for the petitioner to receive a concurrent sentence, the federal case would have to be resolved first. The state further agreed that if the federal ten year sentence was imposed first, the state would not object to a concurrent twenty year sentence for a total effective sentence of twenty years. The petitioner found that sentence satisfactory.

Thereafter, on September 18, 1995, represented by Gallucci, the petitioner entered pleas of guilty on the state charges. On October 12, 1995, the petitioner pleaded guilty to the federal charge. After his federal sentence was imposed, in accordance with the plea agreement, the state court sentenced him to a term of imprisonment of twenty years to be served concurrently with the federal sentence.[2] The petitioner, however, was not released into federal custody prior to the imposition of his state sentence. As a result, the petitioner was required to complete his state sentence before his federal sentence could begin to run. Thus, the petitioner is required to serve a twenty year state sentence, then a ten year federal sentence for a total effective sentence of thirty years, rather than the twenty year sentence for which he claims to have bargained.

On January 6, 1999, the petitioner filed an amended petition for a writ of habeas corpus. The habeas court

---

[2] The petitioner was sentenced in federal court on May 3, 1996. He was sentenced in state court on May 31, 1996.

denied the petition and granted certification to appeal. This appeal followed.

## I

The petitioner first claims that the court improperly concluded that Gallucci, his defense counsel on the state charges, rendered effective assistance. Specifically, the petitioner claims that counsel failed to effectuate the procedures necessary to fulfill the petitioner's plea bargain, i.e., have the petitioner transferred to federal custody, or, in the alternative, that counsel failed to be sufficiently familiar with the necessary procedures prior to advising the petitioner. The petitioner argues that he was prejudiced as a result because his plea agreement was not given effect. Rather than serve twenty years concurrently, he must serve the federal and state sentences consecutively for a total of thirty years. We affirm the habeas court's judgment.

We must first consider the standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 316, 759 A.2d 118 (2000). As set forth by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in

the adversarial process that renders the result unreliable." See also *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 172–73, 774 A.2d 148 (2001); *Henry* v. *Commissioner of Correction*, supra, 316–17.

"The first component of the *Strickland* test, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted; internal quotation marks omitted.) *Minnifield* v. *Commissioner of Correction*, 62 Conn. App. 68, 71–72, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001).

When claims of ineffective assistance of counsel arise from the plea negotiation process, "to satisfy the prejudice requirement, the defendant must show that there

is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Daniel* v. *Commissioner of Correction*, 57 Conn. App. 651, 665, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000).

The court denied the petition for a writ of habeas corpus on the ground that Gallucci was not the petitioner's counsel in the federal court, nor did he have any control over what occurred there. The court also indicated that Gallucci's "effort to get a state plea bargain of twenty (20) years was effective" and that it "should not interfere with the agreed sentence of the state court . . . ." Therefore, the court concluded that Gallucci's performance did not fall below an objective standard of reasonableness. Our review of the record and briefs supports the court's conclusion.

Gallucci negotiated with the state's attorney a plea agreement of twenty years to run concurrently with the petitioner's federal sentence. Gallucci had no control over the federal sentencing and, therefore, relied on Sheehan to effectuate the federal sentence such that the petitioner could receive a concurrent sentence. Gallucci, unlike Sheehan, was unaware of the fact that the petitioner had to be released to federal custody to have the federal sentence run concurrently with the state sentence. In fact, Gallucci was not informed by Sheehan until November, 1995, after the petitioner had entered his guilty pleas in state court, that the petitioner had to be released to federal custody to effectuate the concurrent time. The record makes clear, however, that at the time the petitioner entered his plea, the court, both attorneys and the petitioner knew that a concurrent federal sentence could not be part of his plea agreement in the state court.[3]

---

[3] The following colloquy occurred:

"The Court: All right. Do either of the lawyers know of any reason why the court should not accept the pleas? . . .

Gallucci also made attempts to have the petitioner transferred to federal custody. Both the state's attorney and the court were unwilling to release the petitioner, who had previously failed to appear and had a prior conviction of manslaughter. Attempts to contact the petitioner's newly appointed federal public defender also proved futile. Gallucci then sought to withdraw the petitioner's plea. The motion, however, was denied on the ground that the state had honored the plea agreement. In his final attempt, Gallucci contacted the federal public defender and informed him that if he could get the federal government to accept the petitioner, that he would make every effort to get the petitioner released from state custody. Both the state and federal government, however, were either unwilling or unable to effectuate the transfer.

In this case, there was no evidence presented that the petitioner received ineffective assistance from Gallucci. Gallucci represented the petitioner only in state court. We therefore determine that the court properly concluded that the petitioner failed to carry his burden of proof requiring him to establish that Gallucci provided ineffective assistance in his representation of the petitioner on the state charges.[4]

---

"[Defense Counsel]: . . . I would indicate also for the purposes of preserving the record . . . that [the petitioner] does have the federal indictment pending. We have met today with the public defender, Michael Sheehan, who's representing him on that, and my understanding was that the state would not object to the sentences being run concurrent, and my understanding from Mr. Sheehan was that the federal government would not have that objection. So, we're aware of it, and we understand it can't be part of this deal, but . . . my client is aware of what the situation is, and I've advised my client.

"The Court: Okay. I was going to ask: He's fully aware of that situation and how you plan to have the federal matter resolved?

"[Defense Counsel]: Yes, Your Honor. We met with the public defender today and discussed that, both he and I, as to how that was going to [get] resolved. My understanding was that the state would not object to it being run concurrent."

[4] We express no opinion as to whether the petitioner has a remedy in federal court.

## II

The petitioner next claims that the court improperly concluded that his guilty pleas were entered knowingly and voluntarily. "[F]or a plea of guilty to be constitutionally valid, it must be *equally* voluntary and knowing . . . . [I]t cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. . . . An understanding of the law in relation to the facts must include all relevant information concerning the sentence. The length of time a defendant may have to spend in prison is clearly crucial to a decision of whether or not to plead guilty." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Collins*, 176 Conn. 7, 9–10, 404 A.2d 871 (1978). The petitioner contends that his plea was not knowingly and voluntarily entered because he entered his plea on the mistaken belief that he would be serving a total effective sentence of twenty years, rather than thirty years. We decline to review his claim.

The state argues that the petitioner's claim that his plea was not knowing and voluntary is not reviewable by this court because the petitioner did not properly pursue the claim on direct appeal. The validity of guilty pleas can be challenged before sentencing and on direct appeal. The petitioner, however, first attacked his plea in his habeas petition.[5]

---

[5] The petitioner argues that whether his plea was knowing and voluntary could not have been answered without the benefit of an evidentiary hearing and, therefore, his claim properly was brought to the habeas court. We reject the petitioner's argument that the habeas court was the appropriate venue for pursuing his claim that his plea was invalid.

It is well established that where a court denies a defendant's motion to withdraw his plea, the defendant may request an evidentiary hearing on the motion. The defendant did not request such a hearing in this case. The evidentiary hearing typically provides the record necessary for this court to review the defendant's claim on direct appeal that his plea was involuntary or unknowing. The defendant may raise the denial of the motion for an evidentiary hearing as a claim of error in an appeal from his conviction. The appellate court, however, may, in some cases, hear the direct appeal of the motion for withdrawal even where no evidentiary hearing is requested.

The appropriate standard for reviewability in a habeas corpus proceeding of constitutional claims not adequately preserved at trial is the *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); standard of " 'cause and prejudice.' " *Johnson* v. *Commissioner*, 218 Conn. 403, 412–13, 589 A.2d 1214 (1991). "[T]his court strongly disfavor[s] collateral attacks upon judgments because such belated litigation undermines the important principle of finality . . . . Therefore, we will review the claim only where the petitioner demonstrates good cause for the failure to preserve a claim at trial and actual prejudice resulting from the alleged constitutional violation." (Citation omitted; internal quotation marks omitted.) *Bowers* v. *Commissioner of Correction*, 33 Conn. App. 449, 451, 636 A.2d 388, cert. denied, 228 Conn. 929, 640 A.2d 115 (1994).

"Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition." *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 40, 779 A.2d 80 (2001). Because "[c]ause and prejudice must be established conjunctively," we may dispose of this claim if the petitioner fails to meet either prong. *Bowers* v. *Commissioner of Correction*, supra, 33 Conn. App. 452.

Initially, the court did not make a finding regarding cause and prejudice. This court typically remands a case where there is evidence of cause and prejudice, and the habeas court has failed to make a finding on the record regarding cause and prejudice. See *Giannotti* v. *Warden*, 26 Conn. App. 125, 599 A.2d 26 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). In this

---

*State* v. *Johnson*, 253 Conn. 1, 50 n.53, 751 A.2d 298 (2000). The petitioner cannot fail to seek an evidentiary hearing on a motion for withdrawal of his plea and then bypass his direct appeal by obtaining a hearing in the habeas court.

case, however, the petitioner had filed a motion for articulation of the habeas court's ruling. The court denied the motion, and this court denied the petitioner's motion for review of the habeas court's denial. After oral argument, this court vacated, in part, its order denying the relief requested and ordered the habeas court to articulate whether it found that the petitioner had met the cause and prejudice test set forth in *Wainwright* v. *Sykes*, supra, 433 U.S. 72.

In its articulation, the court stated that "the petitioner's plea was not unknowingly entered because, contrary to his claim, no assurances were made to him that his sentences would be concurrent, and he was aware that unless the mechanics of transfer were successful, he would be serving twenty years under state jurisdiction." Ultimately, the court concluded that "[t]he petitioner failed to show actual prejudice since the sentence received was in accordance with his pleas although the mechanics hoped for by the petitioner failed."

We agree with the court's conclusion that the petitioner could not have been prejudiced by counsel's failure to raise the claim on direct appeal because the record supports the court's finding that he was not mistaken about the sentence he would receive under state jurisdiction. We therefore cannot conclude that he was actually prejudiced by the alleged constitutional violation.

### III

The petitioner finally claims that the court improperly denied the motion to set conditions of release. We disagree.

At the habeas hearing, the petitioner filed a pleading titled, "Motion to Set Conditions of Release," asking the court to release him pending the litigation of the habeas petition. The petitioner argued that such a

release would have allowed him to be discharged to the federal detainer and thereby allowed the state sentence to run concurrently with the federal sentence. The petitioner did not seek a release from custody altogether; rather, he sought a release to the federal detainer.

While the court did not render a decision on the motion, it is clear that the motion was denied, as the petitioner never was released. During the hearing on the motion, the court expressed its reservation about releasing the petitioner because federal authorities would not accept custody of him on their detainer until the state had completed its jurisdiction over him. Furthermore, there was some question as to whether the court had the power to release a sentenced prisoner. In his motion and at the hearing on the motion, the petitioner argued that the court has inherent authority to release a prisoner from state custody. On appeal, the petitioner has failed, however, to cite any authority by which the court could set conditions of release.

Our Supreme Court has held that in the context of a habeas corpus proceeding, the Superior Court may, in the exercise of its discretion, admit a petitioner to bail. *Carino* v. *Watson*, 171 Conn. 366, 371, 370 A.2d 950 (1976), citing *Winnick* v. *Reilly*, 100 Conn. 291, 123 A. 440 (1924). In *Carino*, the plaintiff, who had been arrested on a governor's extradition arrest warrant, was admitted to bail pending a hearing on his petition for a writ of habeas corpus. On appeal, the court held that "[t]he power to admit to bail after conviction is not a statutory but a common-law power . . . bail is then a matter of absolute discretion, to be exercised by the court, however, with great caution, and rarely allowed when the crime is serious." (Internal quotation marks omitted.) *Carino* v. *Watson*, supra, 368–69. We assume, without deciding, that the habeas court had the authority to release the petitioner in this case, and we conclude

388

that as in *Carino,* the proper standard by which to review the habeas court's denial of the petitioner's motion to set conditions of release is the abuse of discretion standard.

"Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) *State v. Relliford,* 63 Conn. App. 442, 447, 775 A.2d 351 (2001). We conclude, assuming that the court had the power to release the petitioner, that the court did not abuse its discretion in deciding not to release him in light of the risk of flight, the severity of the crime charged and the uncertainty that the petitioner would be released directly to federal custody.

The judgment is affirmed.

In this opinion the other judges concurred.