## MICHAEL BRAHAM *v.* COMMISSIONER OF CORRECTION
### (AC 21993)

Foti, Dranginis and West, Js.

1

2

Argued June 3—officially released August 27, 2002

*Judith M. Wildfeuer*, deputy assistant public defender, for the appellant (petitioner).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Michael Gailor*, assistant state's attorney, for the appellee (respondent).

*Opinion*

DRANGINIS, J. The petitioner, Michael Braham, appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that (1) he had effective assistance of counsel, and (2) his guilty plea was knowingly, intelligently and voluntarily made. We affirm the judgment of the habeas court.

The facts underlying the petitioner's arrest and subsequent guilty plea are as follows. On June 24, 1996, in the area of 104 Westbourne Parkway in Hartford, the petitioner shot and killed Jeffrey Murphy. The petitioner and the victim had attended a cookout that day where the petitioner consumed beer and smoked marijuana. The petitioner and the victim had engaged in an argument that began the previous night over a sale of drugs.

The petitioner testified at the habeas trial that he had been angry about the continuing argument with the victim.

According to the petitioner, the victim threatened that he would "see" the petitioner when the petitioner did not have his gun. The petitioner interpreted that to mean that he and victim were "at war now." He then withdrew his gun and tried to strike the victim with it, but the victim ran away. The petitioner proceeded to fire shots in the direction of the victim. One of the bullets struck the victim and killed him. The victim's cousin, Troy Murphy, witnessed the shooting and gave a statement to the police. The police seized the petitioner's shirt, which later tested positive for gunpowder.

On July 2, 1996, the petitioner was charged with murder in violation of General Statutes § 53a-54a.[1] The state

[1] General Statutes § 53a-54a provides: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a) of this section, on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony or murder under section 53a-54d."

The petitioner initially was charged with murder in violation of § 53a-54a, carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a) and reckless endangerment in the first degree in violation of General Statutes § 53a-63. The case then was transferred to part A of Hartford Superior Court on July 2, 1996, where the petitioner was charged solely with murder.

filed a part B information on August 25, 1997, charging the petitioner with commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k.[2] Attorney Joseph S. Elder represented the petitioner on all charges. He met with and telephoned the petitioner on numerous occasions during the course of his representation.

On January 22, 1998, the petitioner entered a guilty plea under the *Alford* doctrine[3] to the charge of murder. The trial court accepted the plea as knowingly and voluntarily made and sentenced the petitioner to a term of thirty-two years incarceration pursuant to a plea agreement. On June 29, 2000, the petitioner filed an amended petition for a writ of habeas corpus. The habeas court dismissed the petition and granted certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

The standard of review of a habeas court judgment is well established. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 68 Conn. App. 190, 192, 791 A.2d 588,

---

[2] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

At the sentencing hearing, the state chose not to pursue an enhanced sentence under § 53-202k.

[3] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

cert. denied, 260 Conn. 910, 795 A.2d 544 (2002). "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 66 Conn. App. 850, 851, 785 A.2d 1225 (2001).

I

The petitioner first claims that the habeas court improperly concluded that he had effective assistance of counsel. The petitioner's ineffective assistance of counsel claim is twofold. First, the petitioner argues that Elder was not reasonably competent in his knowledge, investigation and advice concerning the affirmative defense of extreme emotional disturbance and the use of voluntary intoxication to negate the element of intent in the crime of murder.[4] Second, the petitioner argues that Elder's representation was deficient in that he allegedly informed the petitioner that he would be eligible for parole after serving 50 percent of his sentence when, in fact, there is no parole eligibility for murder. We do not agree with the petitioner's claims.

In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. "First, the [petitioner] must show that counsel's performance was

[4] General Statutes § 53a-7 provides: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *Guadalupe* v. *Commissioner of Correction*, 68 Conn. App. 376, 380–81, 791 A.2d 640, cert. denied, 260 Conn. 913, 796 A.2d 557 (2002).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Henry* v. *Commissioner of*

*Correction,* 60 Conn. App. 313, 317–18, 759 A.2d 118 (2000).

When the ineffective assistance of counsel claim arises from the plea negotiation process, the prejudice requirement is satisfied if the petitioner proves that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Daniel* v. *Commissioner of Correction,* 57 Conn. App. 651, 665, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000).

A

The petitioner first argues that he had ineffective assistance of counsel because Elder was not reasonably competent in his knowledge, investigation and advice concerning the defense of extreme emotional disturbance and the use of voluntary intoxication to negate intent. We do not agree.

The affirmative defense of extreme emotional disturbance is set forth in § 53a-54a, which states in relevant part that "it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ." The court held that the petitioner had failed to prove any deficiency by Elder in his knowledge, investigation or advice concerning the defense of extreme emotional disturbance. At the habeas trial, both the petitioner and Elder testified. The court found Elder's testimony credible as to the reasons why he did not pursue the extreme emotional disturbance defense. That determination was based on Elder's fifteen years of experience practicing criminal law. Furthermore, the

court found that Elder was aware of the possibility of an extreme emotional disturbance defense because the petitioner's mother had informed counsel of some emotional issues that the petitioner had. Elder discussed with the petitioner the possibility of an extreme emotional disturbance defense, but made a decision not to pursue that defense.

The court found that the following reasons proffered by Elder justified his trial strategy not to pursue an extreme emotional disturbance defense. First, Elder had examined the contents of a letter from the petitioner to a friend written one month after the killing. The letter, dated July 29, 1996, indicated premeditation, a lack of remorse and even possible threats to potential witnesses. Second, the state had a strong case consisting of eyewitness testimony and forensic evidence consisting of the shirt seized from the petitioner on which there was gunpowder. Third, Elder believed that a successful extreme emotional disturbance defense would require the petitioner to testify at trial, which would allow the state to impeach him with his prior criminal record. Finally, Elder believed that even if the extreme emotional disturbance defense was successful, the petitioner would be found guilty of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a, which carries a possible forty year sentence.[5] Elder believed that if the petitioner were convicted of manslaughter in the first degree with a firearm, the best sentence that the petitioner reasonably could hope for would be forty years because of his prior criminal history, a possible violation of probation, the part B information and the state's hard-line position against the petitioner.

Elder reasoned that the thirty-two year plea offer was better than the risk of trial where the petitioner faced

---

[5] See General Statutes § 53a-35a (4).

a possible sixty year sentence if convicted of murder[6] and, at best, a forty year sentence if the extreme emotional disturbance defense succeeded and the petitioner was found guilty of manslaughter in the first degree with a firearm. In considering all of those factors, Elder decided not to pursue an extreme emotional disturbance defense at trial.

We conclude that the court properly found that Elder was reasonably competent in his knowledge, investigation and advice concerning the extreme emotional disturbance defense. Taking into account all of the factors and reasons that the habeas court found to be credible, this court must review counsel's performance with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Guadalupe* v. *Commissioner of Correction*, supra, 68 Conn. App. 381. On the basis of our review of the record, we agree with the habeas court that Elder's decision concerning an extreme emotional disturbance defense was not deficient and fell within the realm of a reasonably competent criminal defense attorney's trial strategy.

The court also found that the petitioner offered no evidence at the habeas trial that he was intoxicated. That is a factual finding that we must review under the clearly erroneous standard. *Jackson* v. *Commissioner of Correction*, supra, 68 Conn. App. 192. General Statutes § 53a-7 in relevant part defines intoxication as a "substantial disturbance of mental or physical capacities resulting from the introduction of substances into

---

[6] The potential maximum sentence for murder in violation of General Statutes § 53a-54a is life imprisonment. General Statutes § 53a-35a (2). A life sentence is a definite sentence of sixty years. General Statutes § 53a-35b.

the body." The court noted that the petitioner testified that he had consumed a substantial amount of alcohol and smoked marijuana, but determined that no evidence of intoxication had been presented.

We conclude that the court properly found that Elder was not ineffective by failing to proffer evidence of intoxication to negate intent. Our review of the record supports the court's conclusion that there was no evidence of intoxication. Therefore, the allegation that Elder was ineffective in failing to pursue, investigate or advise the petitioner concerning the use of intoxication to negate intent must fail.

### B

The petitioner's second ineffective assistance of counsel argument is that Elder's representation was deficient in that he allegedly informed the petitioner that he would be eligible for parole after serving 50 percent of his sentence when, in fact, there is no parole eligibility for murder. We disagree.

During the habeas trial, the petitioner testified that Elder had informed him that he would be eligible for parole on the thirty-two year plea offer after serving 50 percent of the sentence and that he had relied on that representation in deciding to plead guilty.[7] The petitioner also cites to a portion of the January 22, 1998 sentencing transcript to support his claim. He cites Elder's statement to the trial court: "And I've encouraged [the petitioner] to look at some other options, like pardon, board of parole board. But I've explained to him that he's going to really do some hard work in terms of rehabilitating himself and changing his life around while incarcerated if he wants to get some consideration later down the road." Elder denied that he

[7] General Statutes § 54-125a (b) (1) provides that there is no eligibility for parole on a murder conviction.

ever told petitioner that he would have to serve only sixteen years of the agreed thirty-two year sentence.

The conflicting testimony of the petitioner and Elder required the habeas court to determine the credibility of each witness. The court is the sole determiner of the credibility of witnesses and the weight to be given to the testimony of each witness. *Johnson* v. *Commissioner of Correction*, supra, 66 Conn. App. 851. We conclude that the court properly found that Elder's representation was not deficient when it credited his testimony that he did not improperly advise the petitioner concerning parole eligibility. We do not find that the court's finding was clearly erroneous. Therefore, the petitioner cannot succeed in his argument that he was misinformed about his parole eligibility.

C

Because we agree with the court's determination that Elder's performance was effective, we conclude that the petitioner failed to satisfy the first requirement of the *Strickland* test for ineffective assistance of counsel. We therefore do not need to analyze the prejudice prong of that test; see *Guadalupe* v. *Commissioner of Correction*, supra, 68 Conn. App. 385; and hold that the court was correct in dismissing the petitioner's amended habeas petition for failure to establish the claim of ineffective assistance of counsel.

II

The petitioner next claims that the court improperly dismissed his amended petition because it did not find that his plea was knowingly, intelligently and voluntarily made.[8] We do not agree.

---

[8] At trial, the petitioner failed to assert under Practice Book § 39-27 his due process claims concerning his guilty plea. He also did not pursue them on direct appeal. The habeas action is the first time that the petitioner has alleged due process violations. We note that generally, unpreserved constitutional claims pursued for the first time by means of a habeas petition are not reviewable unless good cause and prejudice are shown. See *Bowers* v. *Commissioner of Correction*, 33 Conn. App. 449, 450–51, 636 A.2d 388,

Due process requires that a guilty plea must be knowingly and voluntarily entered. See *State* v. *Benitez*, 67 Conn. App. 36, 42, 786 A.2d 520 (2001), cert. denied, 259 Conn. 922, 792 A.2d 855 (2002). "[B]efore accepting a defendant's plea, a trial court must inform him of three core constitutional rights: His right to be free of compulsory self-incrimination, and his rights to a jury trial and to confront his accusers." (Internal quotation marks omitted.) Id. That requirement is set forth in Practice Book § 39-19, although strict compliance with that rule is not required.[9] See *State* v. *Lugo*, 61 Conn. App. 855, 862, 767 A.2d 1250, cert. denied, 255 Conn. 955, 772 A.2d 153 (2001).

Although the court in its memorandum of decision did not explicitly decide the due process claims, they nonetheless were addressed in the court's determina-

cert. denied, 228 Conn. 929, 640 A.2d 115 (1994). We also are aware that the habeas court made no express determination whether those two requirements were met here. Because the due process claims are subsumed in the court's determination of the ineffective assistance of counsel claim and were briefed by both parties, we dispose of those claims. See *Evans* v. *Commissioner of Correction*, 37 Conn. App. 672, 693, 657 A.2d 1115 ("habeas court need not, therefore, separately address due process claims subsumed by claims of ineffective assistance of counsel"), cert. denied, 234 Conn. 912, 660 A.2d 354 (1995).

[9] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

tion that there was effective assistance of counsel. "A habeas court need not . . . separately address due process claims subsumed by claims of ineffective assistance of counsel. The habeas court's finding that the petitioner was not prejudiced by any of the alleged improprieties of . . . counsel necessarily disposed of the petitioner's due process claims as well." (Internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, 61 Conn. App. 825, 833–34, 767 A.2d 790, cert. denied, 256 Conn. 903, 772 A.2d 596 (2001).

First, the petitioner claims that his plea was accepted in violation of his due process rights because of Elder's alleged misrepresentation about parole eligibility for a murder conviction. Specifically, the petitioner asserts that his plea was entered unknowingly because he believed he would have to serve only 50 percent of his sentence. The court, however, concluded that such a misrepresentation was not made by Elder. Because there was no ineffective assistance of counsel during the plea negotiation and no erroneous advice was given, the petitioner's first due process claim must fail.

Finally, the petitioner argues that the trial court had an affirmative duty to advise him of his ineligibility for parole during the plea canvass to ensure that his plea conformed with due process. The record reflects, however, that the court complied with the due process requirements set out by the United States Supreme Court and Practice Book § 39-19.[10] In addition, our

[10] The trial court advised the petitioner of his rights and ensured that the plea was entered voluntarily and knowingly. The court found that the petitioner was twenty-three years old and had a high school education. The petitioner stated he was not under the influence of alcohol, drugs or medication. The petitioner stated that he had had enough time to discuss the plea with his attorney and that he was satisfied with counsel's legal advice. The petitioner stated that he was entering the plea of his free will without having been threatened or forced to do so. The court then advised him of the constitutional rights he was waiving, including the right to plead not guilty, the right to have the state prove his guilt beyond a reasonable doubt at trial, the right to confront and to cross-examine witnesses, the right to present any defenses to the charge and the privilege against self-

Supreme Court has held that "due process does not require a trial court to advise the defendant of his statutory parole ineligibility during a plea canvass." *State* v. *Andrews*, 253 Conn. 497, 512, 752 A.2d 49 (2000). Due process also does not impose on the trial court "a duty to discover and dispel any unexpressed misapprehensions that may be harbored by a defendant." (Internal quotation marks omitted.) Id., 509. Because the habeas court found that Elder did not misinform the petitioner concerning parole eligibility, any belief that the petitioner may have had concerning parole was not due to error by Elder, but was an "unexpressed misapprehension" that the trial court did not have a duty to correct. We therefore conclude that the habeas court properly found that the petitioner's plea was knowingly, intelligently and voluntary made.

The judgment is affirmed.

In this opinion the other judges concurred.

incrimination. The court also recited the elements of murder and the maximum and minimum sentences for murder. Finally, the court stated that there would be a sentence of thirty-two years imposed. The petitioner agreed that this was his understanding of the agreement and that it was the basis for his plea.