[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By her petition dated October 4, 2001, petitioner seeks a writ of habeas corpus. Petitioner and her common-law husband, Carmelo Rivera, were co-defendants in a criminal action brought in the judicial district of Hartford. Both petitioner and her co-defendant were charged on substitute information with two counts alleging the commission of the crime of conspiracy to commit kidnaping in the first degree in violation of C.G.S. §§ 53a-48 and 53a-92 (a) (1) (A).
For reasons hereafter stated, the petition is dismissed.
The cases were tried to the jury before Devlin, J. Carmelo Rivera was represented by Attorney William Gerace. At the conclusion of the state's evidence, on motion by Attorney Gerace, the court granted a motion for judgment of acquittal on grounds that the evidence would not reasonably permit a finding of guilty. Connecticut Practice Book § 42-40.
Petitioner was convicted of both of the offenses charged. As a result of this conviction, on June 12, 1998, petitioner was committed to the custody of the commissioner of correction for a total effective sentence of fifteen years execution suspended after eight years with five years probation. Petitioner is now serving such sentence in the custody of respondent.
Petitioner appealed the conviction. In upholding the conviction, the Appellate Court concluded that a jury could find the following facts: "The defendant and the victim, Quintina Texidor, knew one another in high school and socialized. Sometime after midday on February 25, 1997, the victim, her two year old daughter and the defendant were at the victim's house in Hartford watching television. At the defendant's suggestion, the victim and her daughter accompanied the defendant to her home in West Hartford. The defendant drove them to her house in her Cadillac automobile. CT Page 12871
Upon entering the defendant's house, the defendant grabbed the victim's daughter from the victim's arms and took her somewhere upstairs in the house. Two men came into the first floor from the basement of the house. The victim later identified the men, both of Jamaican descent, as "Patrick" and "Dred": Patrick grabbed the victim by the neck and told her that she had something that belonged to him. The men took her into the living room and repeatedly told her that she had a package containing fifteen pounds of marijuana that belonged to them. The victim denied having the package.
At that point, the defendant left the victim's daughter upstairs and came to the living room. The defendant called the victim's boyfriend, Ismael Sanchez, told him that she had his daughter and his girlfriend, and said, "Please tell me you got eight Gs or I'm gonna let them take her to the Bronx and kill her, do whatever they want with her." the defendant's boyfriend, Carmelo Rivera, arrived at the house. He and the defendant argued in Spanish in the kitchen. The victim understood their argument and testified that Carmelo Rivera wanted the defendant to settle the dispute, but that the defendant wanted to proceed with the scheme and handle things her way. At one point, Carmelo Rivera called Sanchez and said, It's not me. They want the money.' the defendant grabbed the telephone from Carmelo Rivera and told Sanchez, "Yo, just get the money. Yo, you got a daughter. I keep telling you they gonna take her. You ain't never gonna see them again."
Patrick and Dred later led the victim into a car outside the defendant's house. The victim's daughter remained, screaming and crying, with Carmelo Rivera at the defendant's house. While Dred pointed a gun at the victim in the backseat of the car, Patrick drove and the defendant rode in the passenger seat of the car. The four individuals traveled around for several hours. The defendant smoked marijuana and laughed while in the car; she acted "like everything was a joke to her."
During the afternoon, the defendant repeatedly spoke with Sanchez by telephone and demanded money from him. Patrick eventually drove to a shopping center in Bloomfield and met with Carmelo Rivera. At that time, the defendant exited the car, got into Carmelo Rivera's car and drove away. Carmelo Rivera informed Patrick that the police were involved and that they should release the victim. The men took the victim to the Hartford train station and threatened to come after her if anything happened to the defendant or to Carmelo Rivera. The victim's daughter already had been returned to the victim's home."State v. Rivera,61 Conn App. 763, 764-766 (2001).
During the trial, and the pretrial proceedings, petitioner was CT Page 12872 represented by Attorney Gerald M. Klein. By her petition, it is alleged that petitioner's incarceration is illegal in that it came about as a consequence of Attorney Klein's ineffective representation of her in violation of her rights under the Sixth Amendment to the Constitution of the United States and Article I, § 8 "of the Constitution of Connecticut.
As a defendant in a criminal prosecution, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings.". . . This right arises under the sixth and fourteenth amendments to the United States constitution" Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995). (Citations omitted.)
The general standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed. 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there "is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638,640-641 (1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
It is alleged in the petition that Attorney Klein provided ineffective assistance to petitioner in that he failed to accompany her to at least two scheduled plea negotiations when the prosecutors made offers to resolve her case. An attorney called by petitioner to testify as an CT Page 12873 expert in the field of criminal law testified that it would be completely inappropriate for a client to negotiate and discuss plea agreements or to get into specifics of the case with the state's attorney. He stated that if the defense attorney could not attend court on the day negotiations were scheduled, a continuance should be requested. The situation which occurred here, however, was quite different than that outlined by the petitioner's expert.
A proper consideration of this claim requires a review of the relationship between petitioner and her co-defendant, Carmelo Rivera, and the approach which the attorneys and the state took in attempting to resolve both cases short of trial.
After Texidor returned home, she filed a formal written statement with the police. State v. Rivera, supra, 61 Conn. App. 766. This resulted in arrest warrants being issued for Carmelo and petitioner.
Attorney Klein was contacted by petitioner and Carmelo Rivera shortly after they learned that they would probably be arrested. Attorney Klein, who had previously represented Carmelo in unrelated matters, arranged for their surrender after warrants had been issued. Attorney Klein also represented both of the parties at a subsequent bond hearing.
Shortly thereafter, the parties met with Attorney Klein who indicated that he could not represent both petitioner and Carmelo. Attorney Klein recommended that Carmelo retain Attorney William Gerace. Carmelo agreed and Attorney Gerace commenced representing him.
Throughout the case, the attorneys worked closely with each other and with their clients. Payment of attorney's fees and expenses were initially made through Attorney Klein. The attorneys' offices were located in close proximity and conferences involving both petitioner and Carmelo were held at various times at Mr. Gerace's office.
In pretrial negotiations, the cases were discussed together. The state's attorney assigned to the case made an offer to resolve the cases with pleas and sentences of 30 years, execution suspended after 15 years followed by five years probation. Attorney Klein did not consider this offer to be realistic and thought that his client would do better than that after trial. This information was communicated to petitioner. Petitioner rejected the offer and further indicated that she would not agree to any offer which involved incarceration.
The cases against petitioner and her co-defendant arouse out of the same set of facts and were to be tried together. The attorneys were CT Page 12874 attempting to resolve the matters as a package. Illustrative of this approach is that in subsequent dealings, Attorney Klein was in hope that Carmelo, being older and with a criminal record, would agree to a more substantial sentence so that petitioner's exposure would be greatly reduced.
Both petitioner and Carmelo's cases were scheduled for conferences on May 27, 1997. It is not certain as to whether there was to be a pretrial conference or whether the parties were to simply indicate whether or not they accepted or rejected the state's offer. Presumably, if the position of the parties was close, negotiations would follow. This was not the case here, however, where the parties were far apart and petitioner had indicated that she would not accept any offer which involved incarceration.
On the day assigned, Attorney Klein was on trial in New Britain.[1]
Petitioner and Carmelo did attend court together. Either Attorney Gerace, or his associate, was present and informed the court that the state's offers had been rejected. The case was then placed on a jury trial list.
At no time did petitioner enter into negotiations with the state's attorney or communicate directly with that office.
It would have been preferable for Attorney Klein to have been in court with petitioner on May 27, 1997. Under the circumstances of this case, however, it cannot be found that his failure to be present, or to request a continuance, was of such a consequence as to amount to ineffective assistance of counsel. Also, since it was highly unlikely that the state's offer would be reduced by negotiation to no confinement and petitioner had indicated that she would accept no offer involving jail time. Considering all of the facts, it cannot be found that she suffered any prejudice as a result of Attorney Klein's not being in court on May 27, 1997.
It is alleged in the petition that Attorney Klein failed to adequately prepare for trial, which resulted in his failure to raise accurate and critically evidence which would have exonerated petitioner at trial.
As a part of the allegations that Attorney Klein failed to adequately prepare for trial is a claim that he did not hire an investigator to assist in petitioner's defense. The evidence indicates that Attorney Gerace retained the services of Manuel Pacheco, a licensed investigator to conduct an investigation. Mr. Pacheco testified that he was retained to investigate on behalf of Carmelo Rivera. He stated that he was not CT Page 12875 retained to investigate on behalf of petitioner and that he never conferred with Attorney Klein. The investigator did state, however, that anything which he came across which might be detrimental to petitioner would have to be reported.
The investigation consisted primarily of interviews with Carmelo Rivera and Quintina Texidor. The information obtained from Ms. Texidor "pretty much mirrored" that which she gave to the police. A report dated April 14, 1997 was filed by the investigator with Attorney Gerace. Attorney Klein testified that he and Attorney Gerace had agreed that an investigator should be hired to look into certain aspects of the case for both clients. At the time their defenses were identical. It was agreed by the attorneys that the usual investigator used by them could not be hired to investigate this case since a Spanish-speaking investigator would be more appropriate. Attorney Klein sent a check for $460 to Mr. Gerace's associate for the costs of the investigation.
In accordance with this agreement, Mr. Gerace retained the services of Investigator Pacheco.
Since Attorney Gerace represented only Carmelo Rivera, it is not surprising that Pacheco conducted the investigation on behalf of Mr. Rivera. This would, however, not prevent the attorneys from sharing the results of the investigation. Attorney Klein testified that he received a copy of the investigator's report.
Mr. Pacheco's assignment was to investigate whether or not Quintina Texidor was frequently receiving packages through either UPS or FedEx or things of that nature. The investigation does not appear to have developed any significant information not previously known by the attorneys. Under the circumstances, it cannot be found that petitioner suffered any prejudice because of the way that this investigation was conducted.
Subsequent to petitioner's conviction, in the spring of 1999, Quintina Texidor, one of the state's principal witnesses at the trial, met with Investigator Pacheco and gave a statement which the investigator videotaped. In this videotape, Texidor recanted her trial testimony implicating petitioner in the kidnaping. It is petitioner's claim that if her case had been properly investigated, this exculpatory testimony would have come to light and could have been used to defend petitioner at trial.
Texidor testified that the recantation video was induced by an offer of money, it was not true and that Pacheco had prompted her as to what to CT Page 12876 say. Irrespective of the testimony as to how the videotape was induced and made, if it had been available to the defense at the time of trial, Texidor's credibility as a witness would have been greatly reduced.
Petitioner has failed to demonstrate how a similar videotape or change in her version of the facts by Texidor could legitimately have been produced in preparation for trial. Pacheco's pretrial investigative assignment was concentrated on Texidor. He investigated her and obtained a statement from her. This statement was substantially the same as to that given to the police. No showing has been made as to how Texidor could legitimately have been induced to change her version of the facts prior to trial.
It is alleged in the petition that Attorney Klein was remiss in failing to inquire into or investigate the true perpetrators of the crime for which petitioner was charged and convicted despite the fact that these suspects had been named and identified by both the alleged victim, her boyfriend and the police. It must be concluded that the "true perpetrators of the crime" as alleged in the petition were the two Jamaicans described in the Appellate Court decision as "Patrick and "Dred."
Investigator Pacheco was not requested to do any investigation concerning these two gentlemen. Patrick and Dred were drug dealers who were at petitioner and Carmelo's residence on February 25, 1997. They were armed and threatened Texidor with death if she did not deliver up a package containing marijuana which they claim belonged to them.
Carmelo Rivera had business dealings with Patrick and knew where he could be reached. Neither Attorney Klein nor Attorney Gerace made any effort to contact Patrick or Dred or to investigate them or to subpoena them in to the trial.
There was no evidence presented at the habeas proceedings to indicate what benefit could be derived from bringing these two drug dealers into the case or how their testimony might be beneficial to petitioner.[2]
The two Jamaicans were never identified and therefore were never arrested., There was no evidence that Carmelo ever informed the police where these parties could be located. There is nothing to indicate that they would have cooperated with petitioner if they had been contacted. In all likelihood, their motivation would have been self interest. It is pure speculation as to how they would have benefitted petitioner if they had been brought into the "case".
Even if they had been subpoenaed to testify, it is extremely doubtful CT Page 12877 that they would have been inclined to waive their Fifth Amendment rights and testify. Attorney Klein testified that as a tactical matter, he did not want them involved in the case. It is alleged in the petition that Attorney Klein was remiss in this.
In evaluating the tactical decision by Attorney Klein, an attorney with over 20 years experience in handling criminal cases, not to investigate or involve the drug dealers who terrorized Quintina Texidor, in the defense of petitioner the court must be highly deferential. It must be concluded that the decision falls within the wide range of reasonable professional assistance which constitutes adequate representation. Brahamv. Commissioner of Correction, 72 Conn. App. 1, 6 (2002). It cannot be found that in failing to investigate Patrick and Dred, Attorney Klein's conduct fell below the standard of competence required in such matters.Mercer v. Commissioner of Corrections, supra, 51 Conn. App. 640-41.
It is alleged in the petition that during the period Attorney Klein represented petitioner, he had four ten-minute office conferences with her for a total of 40 minutes and that petitioner was never alone with Attorney Klein. It is claimed that the conferences were always dominated by her co-counsel, Carmelo Rivera and his lawyer. The essence of this allegation is that Attorney Klein met with petitioner for an insufficient amount of time to enable him to adequately prepare for trial. Petitioner testified that she met with Attorney Klein only four times for about 20 minutes and the basic discussion was always about money. The expert called by petitioner testified that a lack of meetings by a defense counsel with his client would affect the attorney's ability to adequately represent that client.
Attorney Klein's testimony as to his meetings with petitioner was at variance with the allegations of the petition and with petitioner's testimony. Petitioner's expert testified that the better policy would be for defense counsel to keep notes as to conferences with his client. Attorney Klein admitted that his notes concerning meetings with petitioner were not complete. From the evidence, however, it must be concluded that the attorney met with petitioner a number of times and spoke with her concerning the case on the telephone. On some occasions, they met at Attorney Gerace's office with Carmelo present. Attorney Klein also met alone with petitioner. Attorney Klein testified on occasion they met at Attorney Gerace's office and then he took petitioner to his office for private discussions concerning the case. He testified that they discussed trial strategy at least two or three times.
It is claimed that Attorney Klein never reviewed the arrest warrant with petitioner. In this connection, there was evidence that Carmelo's CT Page 12878 warrant, and not petitioner's warrant, was in the attorney's file. The evidence indicates that warrants were issued for the arrest of Carmelo and petitioner at the same time for offenses arising out of the same factual situation. The arrest warrant for petitioner was never put into evidence. A review of Carmelo's warrant indicates that the same affidavit could have been used to support the warrant for petitioner's arrest. There is a strong likelihood that the warrants were identical. Attorney Klein testified that they were. At the start of trial, the judge informed the jury that the information were identical. The fact that Attorney Klein's file contained only Carmelo's warrant does not appear to be significant. Petitioner claims that Attorney Klein never reviewed the warrant with her. Attorney Klein did not specifically recall going over the document with petitioner, but he was sure that he had done so. The affidavit section of the warrant application contains the factual basis of the state's case against petitioner. Attorney Klein testified that he discussed the facts of the case with petitioner. From his testimony on the subject, it is most probable that he reviewed the warrant with petitioner, but even if the document itself was not reviewed, the facts contained in the warrant were certainly gone over with petitioner. It cannot be found that petitioner has proven that Attorney Klein failed to review the allegations of the arrest warrant with her or that she suffered any prejudice if this was not done.
The petition alleges that Attorney Klein was remiss in failing to point out "blatant discrepancies" contained in the West Hartford police report. An incident report from the Hartford Police Department with a report date of 2-25-97[3] and a statement made to the West Hartford Police Department by Quintina Texidor on February 26, 1998 were placed in evidence. The Hartford report states that Carmelo telephoned Ismael Sanchez "approximately" three times to demand $8,000 in connection with the kidnaping of Texidor. In her statement to the West Hartford police, Texidor stated that Carmelo called Ismael on a cordless telephone and informed him that the guys wanted $8,000.
In her testimony at trial, Texidor testified that petitioner made all of the telephone calls to Sanchez. She did not testify that Carmelo made any calls. This is at variance with her statement made to the West Hartford Police.
Attorney Klein had Texidor's statement prior to cross examining her. In his cross examination of Texidor, Attorney Klein brought out certain discrepancies between her testimony and the prior written statement. In response to the attorney's questions, Texidor testified that her recollection of the events of February 27, 1997 was better at the time of trial than at the time the statement was made because she was very CT Page 12879 nervous when the statement was made shortly after her return home.
At no time did Attorney Klein question Texidor about the discrepancies between her statement and her testimony on direct examination that petitioner made the telephone calls. It must be concluded that Attorney Klein was remiss in not exploring this discrepancy. Texidor was the state's primary witness against petitioner and it would have been proper to impeach her credibility on this point.
Sanchez also testified that petitioner made telephone calls to him demanding money. He also testified that he received a call from Carmelo. The police report stated that Carmelo made three calls to Sanchez and it does not identify petitioner as a caller. The testimony of Sanchez was at variance with the police report. Attorney Klein did not cross examine Sanchez about this discrepancy. The attorney certainly could have questioned Sanchez about this difference between his testimony and the police report. The failure to cross examine Sanchez, however, is not as significant as the failure to cross examine Texidor concerning who made the telephone calls since the police report was not a statement made by Sanchez and he could not be required to vouch for the accuracy of the report.
At the conclusion of the state's case, Attorney Gerace made a motion pursuant to Practice Book § 42-40 for a directed verdict of acquittal. At the conclusion of Attorney Gerace' s argument on the motion, Attorney Klein stated to the court, "I would join in the motion as to Kathy Rivera. . . ."
Petitioner and his expert claim that this was improper and that Attorney Klein should have made a separate motion for a judgment of acquittal. This argument is not well taken and appears to elevate form over substance. Certainly the trial judge was aware that petitioner was seeking a judgment of acquittal under § 42-40. Attorney Gerace's motion was granted. Attorney Klein's motion was denied as the trial judge stated, "Because there is adequate evidence, if the jury choose to credit it, to make a finding of guilty on the charges that have been brought against her." A review of the trial transcript fully supports this conclusion. An experienced attorney, such as Attorney Klein is, must have been aware that in view of the state of the evidence a motion for judgment of acquittal on behalf of petitioner would not have been granted. The record indicates that a 42-40 motion was made by Attorney Klein at the close of all evidence.
It cannot be found that plaintiff suffered any prejudice as a result of Attorney Klein's handling of the motion under Practice Book § 42-40. CT Page 12880
After the defense motions had been decided, there was discussion on the record as to how the case would proceed and Attorney Klein stated to the Court that petitioner would testify on her own behalf. The petition alleges, "Contrary to a discussion with the Petitioner prior to trial, trial counsel spontaneously and without adequately consulting with the petitioner, decided that the petitioner take the witness stand. Counsel spent approximately 45 minutes, in total, during a trial recess and in telephone conversation the night before, to prepare the petitioner to take the witness stand in her own defense."
The testimony with respect to this claim is in dispute.
Shortly after Attorney Klein indicated to the court how the defense would proceed, the court adjourned at about 11:30 a.m. to resume at about 10:15 the following morning. A 20 minute charge conference followed the adjournment.
Attorney Klein testified that it was his policy not to make a firm decision as to whether his client should take the stand prior to trial. Deferring this decision until the state's case had been presented and the credibility of the state's witnesses could be assessed does not appear to be an unreasonable tactical decision.
It was Attorney Klein's testimony that he discussed with petitioner whether or not she should testify in the same manner that a judge would question a defendant concerning a party's right to take the witness stand on their own behalf. Attorney Klein stated that he informed his client that Texidor was a credible witness and he recommended that petitioner testify on her own behalf, but that the decision was hers.
The attorney testified that he went over petitioner's testimony with her at his office during the afternoon and that they discussed it on the telephone that night. He advised her also "as to what she could expect by way of cross examination. Attorney Klein also testified that he "met early in the morning on the next day before court with petitioner and went over her testimony at that time. He testified that he wrote out questions for a trial run.
From all of the evidence, it cannot be found that petitioner has proven the allegations of the complaint concerning this claim. Petitioner's version of the facts was not complicated. Her testimony was relatively short and consists of 74 pages in the transcript, including cross examination. Her testimony, both on direct and cross, is consistent with that of a witness who has been adequately prepared for trial. CT Page 12881
A review of the questions asked by Attorney Klein on direct examination and petitioner's answers further indicates that there had been adequate preparation for her testimony. For example, her testimony concerning her prior relationship with Texidor, and the preliminary questions concerning the layout of petitioner's home and other details in her testimony. All of these questions and answers indicates that petitioner was aware of what could be expected by way of questions from Attorney Klein.
The petition alleges that Attorney Klein failed to defend petitioner on the grounds that there was insufficient legal evidence against her. A more serious claim is that the attorney "attempted to defend petitioner claiming "duress" and urged her to testify that she was under duress, despite petitioner having clearly explained to Attorney Klein that "duress" was not a factor in the case. It is petitioner's claim that she was never in fear of Patrick and Dred. Carmelo's testimony supported this claim.
Attorney Klein disputes the testimony of petitioner and Carmelo Rivera. He testified that he did not advise her to testify falsely concerning the duress issue and that he fashioned his questions based upon the information which petitioner had given him prior to trial.
A review of the transcript tends to support Attorney Klein's version. In questioning petitioner, the attorney could not ask leading questions. In answering the questions, petitioner frequently went into great detail concerning threats by Patrick. For example, after testifying that Patrick was holding her responsible for the loss of 15 pounds of marijuana and that she should speak to Texidor or there would be problems, the attorney asked:
"Q All right. Did he mention anything about other members of your family?
A Yes.
Q And what was that?
A He told me that if I wouldn't speak with her, that I was — he was threatening — not only threatening me, my family — since I introduced them, that I had better speak with her and if riot there was going to be trouble not only for my family but for her family."
Petitioner testified that this threatening language was delivered in a loud tone with ethnic slurs. CT Page 12882
Attorney Klein inquired at that point, "How did you feel?" Petitioner responded that she felt threatened not only for herself but for her family. Again, she testified that she was concerned for her personal safety and for her daughter who was then upstairs.
In answer to other questions on direct and cross examination, petitioner testified that she was apprehensive, feared for her safety, was feeling scared for herself and family.
When she was being cross examined about the substance of her telephone calls to Sanchez demanding money, petitioner answered, "I didn't try to. I was in danger of my own life." This answer was unresponsive to the question. The court instructed petitioner to "please try to answer the question, ma' am." There were other instances where petitioner answered questions indicating that she felt threatened by the drug dealers where a different answer might have been appropriate.
At the habeas trial, petitioner testified that she was never in fear for herself or her family. She testified that her trial testimony to the effect that she was under duress was untruthful and that she told these lies during the trial because her attorney told her to falsify her testimony. In the habeas trial, petitioner testified that she went in the car with Patrick and Dred voluntarily to protect Texidor. Petitioner testified that both she and Carmelo felt that the drug dealers would not harm Texidor if she went with them. She testified that she did this voluntarily without coercion or duress.
This testimony that petitioner lied on the witness stand does not enhance her credibility and indicates that she would be ready to testify falsely if it would be in her best interest. Considering all of the factors involved, including the credibility factor, and after a review of the trial testimony in which she consistently attempted to place before the jury the claim that she acted out of fear for herself and her family, it must be concluded that Attorney Klein's version is correct. His testimony was that he did not induce his client to falsify her testimony but relied upon her statement of the facts in presenting her case.
It is also pure speculation as to what effect her present version of the facts, that she was not in fear of the gun-toting drug dealers would have had on the jury.
It is also alleged in the petition that Attorney Klein failed to defend petitioner on the grounds that there was insufficient legal evidence CT Page 12883 against her to show that she had committed the crimes charged.
Encompassed within this allegation is the claim that after the charges against Carmelo Rivera were dismissed, Attorney Klein should have presented a claim that the conspiracy charges against petitioner would also have to be dismissed since it could no longer be a conspiracy. This claim is based upon the line of cases holding that the acquittal of one conspirator forecloses the conviction of other conspirators found guilty in the same trial. State v. Colon, 257 Conn. 587, 599 (2001). This argument is not applicable to petitioner's situation where the information alleged more than two people were involved in the conspiracy. State v. Abrahm, 64 Conn. App. 384, 392-395 (2001). the information in petitioner's case charged that she and Carmelo "agreed with one or more persons to engage in the criminal activity. The one or more persons were obviously the drug dealers, Patrick and Dred. There was ample evidence for the jury to infer that such an agreement existed between petitioner and the drug dealers. It therefore cannot be found that petitioner suffered any prejudice as a result of Attorney Klein's failure to raise this issue.
In his final argument, Attorney Klein attempted to point out the paucity of evidence on the essential elements of the state's case. He particularly argued that the state had not proven the required criminal intent. Unfortunately for petitioner, the jury did not agree. Considering all of the evidence submitted, it cannot be found that petitioner has proven that Attorney Klein's representation of her fell below the required standard of reasonable competence required. Mercer v. Commissioner ofCorrections, supra, 51 Conn. App. 642.
"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Brahamv. Commissioner of Correction, 72 Conn. App. 1, 6 (2002).
"A fair assessment of Attorney Klein's representation of petitioner leads the court to the conclusion that he rendered adequate assistance to her and that petitioner has not proven the allegations of the petition. CT Page 12884 Accordingly, the petition is dismissed."