## STATE OF CONNECTICUT *v.* MICHAEL HARRIS
### (AC 17487)

O'Connell, C. J., and Schaller and Sullivan, Js.

Argued March 24—officially released June 29, 1999

*Jeremiah Donovan*, special public defender, with whom, on the brief, was *Alix Biel*, law student intern, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David J. Strollo*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Michael Harris, appeals from the judgment of conviction, rendered after

a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (3),[1] assault in the first degree in violation of General Statutes § 53a-59 (a) (5),[2] use of a firearm in the commission of a class A, B or C felony in violation of General Statutes § 53-202k and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[3] On appeal, the defendant claims that the jury's verdict was legally and logically impossible and that the trial court, therefore, improperly denied his motion for a new trial. We affirm the judgment of the trial court in part and reverse it in part.

The jury reasonably could have found the following facts. On January 22, 1996, Llewellyn Williams was in an apartment on the first floor at 26 Stevens Street in New Haven when the defendant, Llewellyn's cousin, came in and demanded that Llewellyn give him $50. Llewellyn told the defendant that he would give him the money, but that he did not have it with him. The defendant left the apartment and returned with a gun. An argument ensued between Llewellyn and the defendant. As the argument continued, the defendant pointed a revolver at Llewellyn. Robert Williams, Llewellyn's twin brother, who had entered the apartment at approximately the same time as the defendant, attempted to defuse the argument between the defendant and Llewellyn. As Robert attempted to restrain the defendant, the defendant fired four shots. One lodged in a wall, two hit Robert and one hit Llewellyn.

[1] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when . . . (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon . . . ."

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[3] The defendant was acquitted of an additional count of assault in the first degree and two counts of attempt to commit assault in the first degree.

Both victims were taken to a hospital where they were treated for gunshot wounds. Llewellyn gave the police a statement at the hospital identifying the defendant as the shooter. Robert's condition was more serious, and he was unable to give the police a statement at the hospital. A few days later, Robert gave the police a statement in which he identified the defendant as the shooter.

The information charged the defendant with seven separate counts. Counts one through three were directed specifically at the defendant's actions toward Robert Williams. The fourth and fifth counts were directed specifically at the defendant's actions toward Llewellyn Williams. Counts six and seven charged the defendant with use of a firearm in the commission of a class A, B or C felony and possession of a firearm without a permit, respectively. Count three, on which the defendant was convicted of the lesser included offense of assault in the third degree, stated: "[The defendant] did, with the intent to cause physical injury to . . . Robert Williams, cause such injury to [Robert] by means of the discharge of a firearm."

When the jury returned with its verdict, it originally found the defendant guilty of the lesser included offense of assault in the second degree against Robert. The trial court informed the jury that it did not have that option.[4] The jury could not have found the defendant guilty of assault in the second degree because General Statutes § 53a-60 (a) (3) requires a finding of "serious physical

---

[4] The trial court instructed the jury as follows: "As to the third and fifth count, which is the assault first with a firearm. First, assault first with a firearm is where with intent to cause physical injury to another person he causes such injury by means of discharge of a firearm. So for this you have to prove beyond a reasonable doubt that the defendant intended to cause physical injury by means of a discharge of a firearm . . . . The lesser of that degree—first, if you don't find him guilty of § 53a-59 (a) (5) then you go to the lesser included, which is assault third with a deadly weapon."

injury," a result different from that required by § 53a-59 (a) (5). Therefore, the jury was limited to considering the lesser included offense of assault in the third degree in violation of § 53a-61 (a) (3). The jury subsequently retired for additional deliberation and returned with a verdict of guilty of the lesser included offense of assault in the third degree against Robert.[5]

## I

"[O]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination of whether, by such denial, the court abused its discretion. . . . As a reviewing court considering the trial court's decision granting or denying a motion for a new trial, we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." (Citations omitted;

---

[5] When the verdict was read back to the jury, the following colloquy took place:

"Clerk: You, ladies and gentlemen of the jury and each of you, do say unanimously that the defendant is guilty of assault with a deadly weapon in the third degree. This is your verdict and so say you all?

"Jury: No.

"Foreperson: I thought we had—we said second degree on that.

"The Court: I need the—this is under the (a) (5) count.

"Foreperson: It should be count three.

"The Court: Count three.

"Foreperson: It's in the second degree.

"The Court: That's solidly definitely weapon in the third degree. That's what was charged on. As to the third and fifth counts. . . . So the second degree only pertained to the first count.

* * *

"The Court: So the only thing I would ask you to do is go back in as to the third count, the lesser include offense, which—you were charged on assault with a deadly weapon third degree . . . .

* * *

"Clerk: How say you to the lesser included count of assault with a deadly weapon in the third degree in violation of General Statutes § 53a-61 (a) (3)?

"Foreperson: We find the defendant guilty.

"The Court: All right. And you've had due time to consider the verdict?

"Foreperson: Yes. We considered it as a group."

internal quotation marks omitted.) *State* v. *Hawkins*, 51 Conn. App. 248, 260–61, 772 A.2d 278 (1998).

The sole issue on appeal is whether the jury's verdict finding the defendant guilty of first degree assault against Llewellyn, which requires that the jury find that the defendant acted intentionally,[6] and third degree assault against Robert, which requires that the jury find that the defendant acted with criminal negligence,[7] was legally inconsistent and impossible. "The general rule, to which we subscribe, was set forth by Judge Learned Hand in *Steckler* v. *United States*, 7 F.2d 59 (2d Cir. 1925), and was confirmed by Justice Holmes in *Dunn* v. *United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932). . . . 'Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.' Id., 393. [Justice Holmes] went on to state: 'That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.' Id., 394." *State* v. *Stevens*, 178 Conn. 649, 653, 425 A.2d 104 (1979).

"We employ a less limited approach, however, when we are confronted with an argument that the verdicts are inconsistent as a matter of law or when the verdicts are based on a legal impossibility. . . . In response to such a claim, we look carefully to determine whether the existence of the essential elements for one offense

---

[6] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[7] General Statutes § 53a-3 (14) provides: "A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

negates the existence of the essential elements for another offense of which the defendant also stands convicted. If that is the case, the verdicts are legally inconsistent and cannot withstand challenge." (Citations omitted.) *State* v. *Hinton,* 227 Conn. 301, 313, 630 A.2d 593 (1993).

The defendant relies on *State* v. *King,* 216 Conn. 585, 583 A.2d 896 (1990). In *King,* our Supreme Court ordered a new trial for the defendant who was convicted of attempted murder, which required a showing of intent, and assault, which required a showing of recklessness, *on the same victim.* Our Supreme Court reasoned that: "Where a determination is made that one mental state exists, to be legally consistent the other must be found not to exist. . . . Logically then, the jury verdicts convicting the defendant of two offenses each of which requires a mutually exclusive and inconsistent state of mind as an essential element for conviction cannot stand." (Citations omitted.) Id., 594. We believe that the reasoning of *King* does not apply under the circumstances of the present case.

Our Supreme Court in *State* v. *Hinton,* supra, 227 Conn. 301,[8] dealt with the issue of whether a person could intentionally assault one victim and, in the same action, recklessly assault another victim. In *Hinton,* the defendant was convicted of assault in the first degree in violation of § 53a-59 (a) (1) and (2), which requires that the defendant act intentionally, and assault in violation of § 53a-59 (a) (3), which requires that the defendant act recklessly. Our Supreme Court stated that the guilty verdicts could be reconciled. "The jury could

---

[8] We note that the Supreme Court in *Hinton* ordered a new trial for the defendant on the charges of attempt to commit murder and assault in the first degree of a single victim because attempt to commit murder required a finding of intent, and assault under § 53a-59 (a) (3) required a finding of recklessness. We also note, however, that both of those charges involved a single victim.

reasonably have concluded that, in attempting to injure or disfigure someone standing near [the victim], the defendant acted recklessly toward [the victim] and therefore recklessly caused injury to [the victim], satisfying the elements of subdivision (3). Although we said in *State* v. *King,* supra, [216 Conn. 585], that a person could not act intentionally and recklessly with regard to the same act and the same result, *here we have two different victims and therefore two different results.* The jury therefore could reasonably have found that when the defendant fired the shotgun at the group of ten to fifteen young men on the sidewalk, causing eight pellets to be fired, he intended to injure one or more of them and was reckless with regard to the rest, including [the victim]." (Emphasis added.) *State* v. *Hinton,* supra, 227 Conn. 314–15.

*Hinton* controls the present case. The defendant brandished a weapon in Llewellyn's direction. The jury reasonably could have found that when the defendant discharged the weapon, he intended to injure Llewellyn and was criminally negligent when he injured Robert. Pursuant to the Supreme Court's analysis in *Hinton,* the verdict is not legally inconsistent.

## II

We next, sua sponte, vacate the defendant's conviction on the sixth count of the information, violation of General Statutes § 53-202k. While neither party briefed the issue, because of the serious constitutional ramifications, we examine this issue under the plain error doctrine. Practice Book § 60-5.

Our Supreme Court held in *State* v. *Dash,* 242 Conn. 143, 150, 698 A.2d 297 (1997), that "§ 53-202k is a sentence enhancement provision and not a separate crime." We conclude that *Dash* governs this situation, and further discussion of our Supreme Court's clear holding would serve no useful purpose. Although the defendant's total effective sentence was proper, the

judgment must be modified to reflect the fact that § 53-202k does not constitute a separate offense. Accordingly, the defendant is entitled to have his conviction under § 53-202k vacated.

The judgment is reversed only as to the separate conviction under § 53-202k and the case is remanded with direction to vacate the defendant's conviction under § 53-202k and to resentence the defendant to a total effective sentence of seventeen years; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.