JOHN VIVO III *v.* COMMISSIONER OF CORRECTION
(AC 24654)

Lavery, C. J., and Schaller and Gruendel, Js.

Argued March 29—officially released July 12, 2005

*Richard W. Callahan*, special public defender, with whom, on the brief, was *Gerald E. Bodell*, special public defender, for the appellant (petitioner).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (respondent).

*Opinion*

LAVERY, C. J. The petitioner, John Vivo III, appeals from the judgment of the habeas court denying in part his petition for a writ of habeas corpus. On appeal, he claims that (1) the court improperly concluded that he received effective assistance of counsel and (2) his sentence under General Statutes § 53-202k should be vacated. We affirm in part and reverse in part the judgment of the habeas court.

As noted by the court, the basic facts of this case are not in dispute. "On or about February 23, 1994, three males entered an apartment at the Evergreen Apartments in Bridgeport, Connecticut, and fired gunshots at a male victim, who was fatally shot, and at a female victim, Yolanda Martinez, seriously wounding her. She survived and testified at probable cause hearings and at two trials that the petitioner was one of the individuals who had fired the gunshots. Later that evening, officers of the Bridgeport police [department] knocked on the door of the apartment of the petitioner, who answered it and permitted the officers to enter. Shortly thereafter, he was arrested and handcuffed."

The petitioner was found guilty by a jury of murder in violation of General Statutes § 53a-54a, assault in the first degree in violation of General Statutes § 53a-59 and commission of a class A and class B felony with a firearm in violation of § 53-202k. The petitioner was

sentenced to sixty years incarceration for murder, ten years for assault in the first degree and five years for commission of a class A and class B felony with a firearm. The trial court ordered the sentences to run consecutively for a total effective term of seventy-five years. The petitioner appealed from his conviction, which our Supreme Court affirmed in *State* v. *Vivo*, 241 Conn. 665, 697 A.2d 1130 (1997). Subsequently, the petitioner filed a petition for a writ of habeas corpus, asserting claims of ineffective assistance of both his trial and appellate counsel.[1] The habeas court denied the petition. The court subsequently granted his petition for certification to appeal, and this appeal followed.

## I

The petitioner claims that the court improperly concluded that he received effective assistance of counsel both at his trial and on appeal. We disagree.

## A

The petitioner first argues that the court improperly found that he received effective assistance from his trial counsel. In his posttrial memorandum of law in support of his petition, the petitioner stated in regard to that claim: "The petitioner acknowledges that the evidence adduced at trial is not sufficient to sustain a verdict in his favor, and abandons the claim." The court acknowledged that statement in its memorandum of decision. We agree with the court that the petitioner expressly abandoned that claim and decline to afford it review. See *State* v. *Johnson*, 82 Conn. App. 777, 794 n.12, 848 A.2d 526 (2004).

## B

The petitioner also claims that the court improperly found that he received effective assistance from his

---

[1] The court rendered judgment in favor of the petitioner on his claim of ineffective assistance of counsel for sentence review and restored his right to sentence review. That claim is not a subject of this appeal.

appellate counsel. He contends that his appellate counsel was ineffective, that counsel's representation fell below the required standard of reasonable competence in that counsel failed to brief a state constitutional claim regarding the suppression of evidence and that the petitioner was prejudiced by that failure. We disagree.

Before considering the petitioner's specific claims, we first address the applicable standard of review. "In *Strickland* v. *Washington*, 466 U.S. 668, 671, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court articulated a two part analysis for evaluating constitutional claims of ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Id., 687. Our Supreme Court has adopted that two part analysis in reviewing claims of ineffective assistance of appellate counsel. *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 455, 610 A.2d 598 (1992); *Sekou* v. *Warden*, 216 Conn. 678, 690, 583 A.2d 1277 (1990); *Valeriano* v. *Bronson*, 209 Conn. 75, 83–84, 546 A.2d 1380 (1988).

"The first part of the *Strickland* analysis requires the petitioner to establish that appellate counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 701, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995). [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy. *Strickland* v. *Washington*, supra, 466 U.S. 689. The right to counsel is not the right to perfect representation. *Siano* v. *Warden*, 31 Conn. App. 94, 97, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993). While an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . *McIver* v. *Warden*, 28 Conn. App. 195, 202, 612 A.2d 103, cert. denied, 224 Conn. 906, 615 A.2d 1048 (1992). Indeed, [e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . . *Valeriano* v. *Bronson*, supra, 209 Conn. 89. Most cases present only one, two, or three significant questions. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones. . . . *State* v. *Pelletier*, 209 Conn. 564, 567, 552 A.2d 805 (1989). Our Supreme Court has stated that [i]t is possible to leave out a dispositive issue on appeal and nevertheless, to have furnished a petitioner with adequate counsel under the sixth amendment. *Valeriano* v. *Bronson*, supra, 87. Finally, [i]f the issues not raised by his appellate counsel lack merit, [the petitioner] cannot sustain even the first part of this dual burden since the failure to pursue unmeritorious claims cannot be considered conduct falling below the level of reasonably competent representation. *Sekou* v. *Warden*, supra, 216 Conn. 690.

"The seminal case of *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 444, considered the prejudice prong of the *Strickland* analysis in claims of ineffective assistance of appellate counsel. Rejecting the petitioner's contention that the proper analytical focus

is the probable result of the appeal, the *Bunkley* court explained that the proper focus instead is the result of the trial. Id., 454. To satisfy the prejudice prong, a petitioner must, thus, establish that, as a result of appellate counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. Put another way, he must establish that, because of the failure of his appellate counsel to raise a [particular] claim, there is a reasonable probability that he remains burdened by an unreliable determination of his guilt. Id. In order to prevail on a claim of ineffective assistance of appellate counsel, therefore, a habeas petitioner must show not only that his appeal would have been sustained but for counsel's deficient performance, but also that there is a reasonable probability that the trial verdict would have been different.

"Our review of the judgment of the habeas court is carefully circumscribed. The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Whether the representation a [petitioner] received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 87 Conn. App. 560, 562–65, 867 A.2d 51, cert. denied, 273 Conn. 934, 875 A.2d 543 (2005). With that standard in mind, we turn to the petitioner's claim.

The petitioner asserts that his appellate counsel provided ineffective assistance by failing to include a state constitutional claim in his brief, in addition to the federal constitutional claim raised on appeal. This issue arises out of an incident that occurred when members of the Bridgeport police department, along with the petitioner's father, went to the petitioner's apartment

to arrest him. After handcuffing the petitioner, the residence was searched to discern whether any of the other persons involved were within the apartment. The petitioner alleges that this was an illegal search used as a fishing expedition to obtain information to gain a subsequent search warrant and that nineteen nine millimeter bullets discovered during this subsequent search were used as evidence against him at trial. In denying the petitioner's motion to suppress this evidence, the trial court found that "[i]t was clear from the very beginning . . . that once they had found [the petitioner] in that apartment . . . they were going to go back and seek a warrant and search that apartment." (Internal quotation marks omitted.) *State* v. *Vivo*, supra, 241 Conn. 670. The court, therefore, based its denial of the petitioner's motion to suppress "on the fact that the police did eventually seek a warrant. There is no claim that that warrant was not a proper search warrant. . . . It is clear in reviewing that warrant that there is nothing in the warrant affidavit mentioning any of the items that might have been viewed by the police prior to their getting the warrant. There is nothing in there about a vest. Nothing in there about bullets, and nothing in there about a mask. So the probable cause to search that apartment was based on other materials contained within that search warrant affidavit. . . . That leads the court to the conclusion that this search was going to take place. The police had always planned to undertake it. They did not require anything that they found in the apartment prior to getting the warrant to establish probable cause. And under the exception to the fourth amendment of inevitable discovery the court rules that the search was proper . . . ." (Internal quotation marks omitted.) Id.

The petitioner argues that the inevitable discovery doctrine, as used by the trial court to deny his motion to suppress evidence obtained with the subsequently

issued warrant, violated his rights under article first, § 7, of the constitution of Connecticut, which his appellate counsel failed to address in his brief on appeal. We note that his counsel did brief the identical issue as a federal constitution claim, which was addressed by our Supreme Court. See id., 665. The petitioner states that the state constitution affords more protection than does the federal constitution regarding search and seizure and, therefore, the state constitutional claim likely would have been more successful on appeal. This court has addressed the same issue in the past. In *State* v. *Anderson*, 67 Conn. App. 436, 787 A.2d 601 (2001), we stated that "it is clear that Connecticut courts, along with the vast majority of all courts, both state and federal, recognize the inevitable discovery exception to the exclusionary rule as formulated by the United States Supreme Court." (Internal quotation marks omitted.) Id., 441 n.8; see also *State* v. *Badgett*, 200 Conn. 412, 433, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). Therefore, regarding that exception to the law on search and seizure, the level of protection afforded by both the federal and state constitutions is the same. Because raising a state constitutional claim on that issue would not have changed the outcome of the petitioner's appeal or altered the trial verdict, his claim lacks merit.

Although the petitioner asserts that the trial court used the inevitable discovery rule as the basis for denying his motion to suppress, we note that on direct appeal, our Supreme Court determined that "[w]hile the trial court alluded to the inevitable discovery doctrine, its analysis and findings indicate that it held the search to be proper pursuant to the independent source doctrine."[2] *State* v. *Vivo*, supra, 241 Conn. 673. The

---

[2] "Both the independent source rule and the inevitable discovery rule rest on assumptions that if the law enforcement agencies involved had eschewed the illegal activity, they nevertheless would have procured the evidence at issue. But the independent source rule applies only upon proof that *in actual fact* the officers did not obtain the challenged evidence as a result

"independent source rule applies only upon proof that *in actual fact* the officers did not obtain the challenged evidence as a result of the primary illegality . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 673 n.5. Thus, our Supreme Court's conclusion that the challenged evidence and its evidentiary fruits were admissible under the independent source doctrine also required the conclusion that there was no taint flowing from it that infected the issuance of the subsequently issued warrant to search the petitioner's residence. In other words, if the police did not obtain the evidence as a result of the alleged "primary illegality," namely, the prewarrant search of the apartment, there was no illegality to taint the subsequently acquired warrant. See *State* v. *Cobb*, 251 Conn. 285, 344–45, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). Therefore, our Supreme Court would have affirmed the judgment of the trial court on a state constitutional claim as it did on the federal constitutional question it addressed. Accordingly, the petitioner has failed to show that he received ineffective assistance from his appellate counsel or that he was prejudiced by the omission of a state constitutional claim.

## II

We next vacate the petitioner's conviction for commission of a class A and class B felony with a firearm in violation of § 53-202k. Although the petitioner first raised the issue on appeal and without specifically

of the primary illegality; the inevitable discovery exception assumes that the evidence was in fact obtained as a consequence of the primary illegality but is invoked by proof that—hypothetically—if the officers had not engaged in the primary illegality, they would nevertheless although in a different manner have obtained the challenged evidence. . . . 1 C. McCormick, Evidence (4th Ed. 1992) § 180, p. 739; see *Murray* v. *United States*, [487 U.S. 533, 540, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988)]." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vivo*, supra, 241 Conn. 673 n.5.

requesting plain error review, because of the serious constitutional ramifications, we examine it under the plain error doctrine.[3] Practice Book § 60-5.

In *State* v. *Dash*, 242 Conn. 143, 150, 698 A.2d 297 (1997), our Supreme Court held that § 53-202k is a sentence enhancement provision and not a separate crime.

We conclude that *Dash* governs the present situation, and further discussion of our Supreme Court's clear holding would serve no useful purpose. Although the petitioner's total effective sentence was proper, the judgment must be modified to reflect the fact that § 53-202k does not constitute a separate offense. Accordingly, the petitioner is entitled to have his conviction under § 53-202k vacated. See *State* v. *Harris*, 54 Conn. App. 18, 25–26, 734 A.2d 1027, cert. denied, 250 Conn. 925, 738 A.2d 660 (1999).

The judgment is reversed only as to the conviction under § 53-202k and the case is remanded with direction to vacate that conviction and to resentence the petitioner to a total effective term of seventy-five years incarceration. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[3] The respondent commissioner of correction argues that the petitioner cannot raise for the first time on appeal a claim alleging an illegal conviction. We disagree. See *State* v. *Harris*, 54 Conn. App. 18, 25, 734 A.2d 1027 (because of serious constitutional ramifications of improper conviction under General Statutes § 53-202k, court may at any time examine issue under plain error doctrine), cert. denied, 250 Conn. 925, 738 A.2d 660 (1999).