## MITCHELL HENDERSON *v.* COMMISSIONER OF CORRECTION
## (AC 26954)

DiPentima, McLachlan and Hennessy, Js.

Argued September 10—officially released November 27, 2007

*Christopher M. Neary*, special public defender, for the appellant (petitioner).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *James E. Thomas*, former state's attorney,

and *Victor Carlucci, Jr.*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HENNESSY, J. The petitioner, Mitchell Henderson, appeals from the denial of his petition for a writ of habeas corpus. On appeal, the petitioner claims that (1) the habeas court improperly denied his petition for certification to appeal, (2) the factual findings of the habeas court were erroneous, (3) the trial court's waiver of counsel canvass of the petitioner was defective and (4) prior habeas and appellate counsel were ineffective for their failure to raise the claim regarding the defective canvass. We affirm the judgment of the habeas court.

The following facts, set forth by this court in *State v. Henderson*, 37 Conn. App. 733, 736–39, 658 A.2d 585, cert. denied, 234 Conn. 912, 660 A.2d 355 (1995), are relevant to the resolution of the issue before us. "On the afternoon of January 17, 1992, the victim, Victorene Hazel, and her companion, Codella Webley, crossed Baltimore Street in Hartford after leaving the Shawmut Bank. When the two women reached the corner of Baltimore Street and Homestead Avenue, they were approached by the [petitioner] who demanded that Hazel hand over her purse to him. The [petitioner] was standing in front of Hazel, at a distance of one and one-half to two feet. Her view of the [petitioner] was clear and unobstructed. After Hazel refused to turn over her purse, the [petitioner] pulled out a knife, grabbed her by the shirt and hit her. When he grabbed Hazel, who had a heart condition, she experienced pain in her chest. The [petitioner] threatened to kill her if she did not give him the purse. When he swung the knife, she freed herself from his grasp and ran in the direction of the Shawmut Bank with the [petitioner] chasing her. Hazel's purse fell off her shoulder as she was running and the [petitioner] picked it up. Hazel entered the bank

screaming that she had been robbed and needed help. When Webley reached the bank, she noticed that Hazel was breathing heavily, holding her chest and saying, 'My heart, my heart.'

"At approximately the same time, Howard Fraser and his cousin, Earl Forrest, were driving on Homestead Avenue when they stopped to look up a telephone number. As Forrest was looking for the number, Fraser noticed from a distance of five to seven yards the victim struggling with her assailant. As he and Forrest were about to drive off, he saw the [petitioner] grab the purse from Hazel. When the victim began to scream, Fraser realized that she was being robbed. Fraser watched the [petitioner] run up Baltimore Street and enter onto private residential property. Fraser realized that the [petitioner] would have to exit on Kent Street, the street parallel to Baltimore Street. Fraser and Forrest drove to Kent Street in anticipation of seeing the [petitioner]. They saw him running down Kent Street toward Albany Avenue with a purse under one arm. Fraser opened the passenger door as they drove up next to the [petitioner]. Forrest told the [petitioner] that they were the police and ordered him not to move. Fraser then jumped out the passenger door and grabbed the [petitioner]. When the [petitioner] resisted, Forrest joined Fraser in an attempt to subdue the [petitioner]. Both Fraser and Forrest repeatedly called for help as they were struggling with the [petitioner]. The [petitioner] struck Fraser during the struggle, and Fraser suffered a wrist injury from striking the [petitioner].

"Officer Douglas Frederick of the Hartford police department arrived approximately five minutes after the struggle had begun and saw the [petitioner] holding the victim's purse. While the [petitioner] was struggling with Forrest and Fraser, the victim's purse fell and its contents scattered onto the street. Frederick's attempt to handcuff the [petitioner] was unsuccessful because

he continued to resist fiercely. Frederick radioed for assistance and, finally, with the help of other police officers, managed to get the [petitioner] into the police cruiser. Frederick then informed the [petitioner] that he was under arrest. . . .

"After Hazel and Webley left the bank, a man in a truck informed them that the robber had been apprehended on Kent Street. The man drove both women to Kent Street. After getting out of the truck, Hazel and Webley saw the [petitioner] sitting in the police cruiser. Frederick had put the victim's purse on top of the cruiser for safekeeping while he was trying to restrain the [petitioner]. Frederick noticed two women running down Kent Street toward his cruiser and he heard Hazel yelling, 'That's him, he robbed me.' Frederick asked both Hazel and Webley to make sure that the man in the cruiser was indeed the robber. Without any difficulty, both women positively identified the [petitioner] as the robber. The weather was clear and there was adequate sunlight to enable the women to make the identification. Although Frederick was able to recover the purse, his search of the [petitioner] did not produce a knife.

"After telling the [petitioner] that he was under arrest and placing him in the police cruiser, Frederick transported him from the scene. The [petitioner] yelled obscenities and threatened to kill the officer. As Frederick drove down Kent Street toward Albany Avenue, the [petitioner] became increasingly violent. The [petitioner] kicked out the rear window of the cruiser and attempted to climb out while the cruiser was in motion. The [petitioner] was able to get his upper torso out of the rear window. Frederick stopped the car and radioed for assistance and an ambulance. Frederick then pulled the [petitioner] out of the cruiser and sat on him until help arrived. When the ambulance arrived, the [petitioner] was put in a body bag and transported to St.

Francis Hospital. The [petitioner] was treated for several cuts he had sustained while attempting to climb out of the rear window of the cruiser.

"The [petitioner] was convicted by a jury of four counts including robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). After the verdict, the [petitioner] moved for a judgment of acquittal and a new trial, which the trial court denied." Id.

After the resolution of the petitioner's direct appeal,[1] he filed his first petition for a writ of habeas corpus on May 5, 1997, alleging ineffective assistance of counsel due to appointed trial counsel's alleged failure to properly prepare his case before trial. The habeas court, Hon. Thomas H. Corrigan, judge trial referee, denied the petition and denied the petition for certification to appeal in August, 1997.[2] The petitioner filed the present habeas petition on September 23, 1997. The last amendment to the petition was filed December 15, 1998.

On November 15, 1999, the petitioner filed a writ of error coram nobis, claiming that the waiver of counsel canvass was ineffective. On March 1, 2000, the trial court held a hearing and denied the writ, finding that it was filed untimely and that habeas corpus was an adequate remedy at law for resolution of his claims against counsel. In April, 2000, the petitioner appealed

---

[1] On direct appeal, the petitioner claimed that (1) the trial court improperly denied his motion to suppress out-of-court identification testimony, (2) the state presented insufficient evidence of physical injury to the victim to support the conviction of assault in the third degree, (3) the state failed to prove that he was in custody for purposes of a charge of attempt to escape, (4) he was denied a fair trial as a result of having been charged with assault in the third degree without a good faith basis for the charge, thereby giving the jury an opportunity to reach a compromise verdict, and (5) the trial court improperly denied his motion for a new trial that was based on his claim of ineffective assistance of counsel. State v. Henderson, supra, 37 Conn. App. 735–36.

[2] The petitioner states in his brief that the decision from his first habeas matter is not the subject of this appeal.

from the judgment of dismissal, which appeal was transferred to the Supreme Court docket, and the trial court's judgment was upheld in *State* v. *Henderson*, 259 Conn. 1, 787 A.2d 514 (2002).

In January, 2001, the habeas court denied the habeas petition at issue in this appeal after hearing three days of testimony. The petitioner filed an appeal through counsel on March 27, 2001. On December 10, 2001, this court dismissed the petitioner's appeal for failure to file a court reporter acknowledgement form regarding completion of the transcript. The petitioner filed a petition for certification to appeal from the dismissal of his case to the Supreme Court. The Supreme Court denied his petition for certification on March 14, 2002. See *Henderson* v. *Commissioner of Correction*, 260 Conn. 904, 793 A.2d 1089 (2002). On August 1, 2005, the petitioner and the respondent, the commissioner of correction, entered into a stipulated habeas judgment seeking the opening of AC 21756 in order to argue the merits of the appeal. This led to the restoration of the petitioner's right to appeal on August 19, 2005. We will address the petitioner's claims in turn.

I

The petitioner claims that the habeas court abused its discretion in denying certification to appeal on March 14, 2002. The respondent argues that this claim cannot be addressed because it is contrary to the record. A review of the record reveals that the denial of certification issued on March 14, 2002, was not a ruling of the habeas court; it in fact was a denial for certification to appeal to the Supreme Court from the dismissal of the Appellate Court case. Id. Because the habeas court did in fact grant certification to appeal, this issue need not be addressed.

II

The petitioner next claims that the habeas court made erroneous factual findings that warrant reversal and a

finding that appellate counsel was ineffective. Specifically, he claims that there were inconsistencies in the factual findings regarding the canvass, that the habeas court should not have allowed a state's attorney to be qualified as an expert witness and that the habeas court improperly sustained objections to questions about *State* v. *Wolff*, 237 Conn. 633, 678 A.2d 1369 (1996),[3] when the court in its memorandum of decision relied on that case to make legal conclusions.[4] Further, he argues that the combined effect of these claimed errors violated his constitutional due process rights. The respondent makes no specific argument as to the whole of this allegation and argues only that the petitioner's claims about the expert witness and about *Wolff* claims are unreviewable. We disagree with the petitioner. We shall examine each specifically claimed error in turn.

A

On appeal, "[t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this

---

[3] The petitioner specifically raises the sustained objection to the direct examination of one of the attorneys who handled the petitioner's direct appeal when he was asked, "[G]iven the state of the law today, and if you had to look at this case again and you're reviewing a transcript where a pro se party represented themselves, there was a canvass, would you change your mind at this point . . . ."

[4] *Wolff* held that "[t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel." (Internal quotation marks omitted.) *State* v. *Wolff*, supra, 237 Conn. 654.

sense. . . . Whether the representation a [petitioner] received . . . was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

The habeas court's factual findings were not erroneous and were not inconsistent. The habeas court found that "the trial court in [this] matter complied with the *Wolff* standards. In particular, the trial court made it clear to the petitioner that he had a choice between proceeding pro se or with assigned counsel . . . ." The habeas court goes on to state that "[t]he trial court did not inform the petitioner that he was free to ask for substitute counsel, which request could be granted for cause shown; *nor does Practice Book § 44-3 require the trial court so to inform the petitioner.*" (Emphasis added.) These are not inconsistent findings; the habeas court found that the trial court informed the petitioner of his choice between self-representation and assigned counsel and did not add warnings that were not legally required. We conclude that this finding was not erroneous.

B

The petitioner next claims that the habeas court improperly qualified a state's attorney as an expert and admitted opinion testimony. "It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion." (Citation omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 368–69, 788 A.2d 496 (2002). "[Thus, our] review of such rulings

is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Wasko* v. *Manella*, 87 Conn. App. 390, 394, 865 A.2d 1223 (2005).

The assistant state's attorney who prosecuted the petitioner's case at the trial level was qualified as an expert in criminal litigation at the habeas trial. The petitioner's objection to having a biased witness was overruled by the court. The court properly allowed the testimony of the assistant state's attorney about the petitioner's apparent knowledge of the court system while properly sustaining objections to questions of law to be determined by the court, specifically, the opinion of the assistant state's attorney on whether the petitioner's waiver of counsel was knowing and voluntary. The habeas court did not abuse its discretion by allowing this expert testimony and correctly applied the law.

C

The petitioner next challenges the legal findings of the habeas court. "The conclusions reached by the [habeas] court in its decision to dismiss the habeas petition are matters of law, subject to plenary review. . . . Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Wilson* v. *Office of Adult Probation*, 67 Conn. App. 142, 145, 786 A.2d 1120 (2001).

The petitioner specifically challenges the court's use of *State* v. *Wolff*, supra, 237 Conn. 633, in its memorandum of decision, after it sustained an objection to questioning a witness using a hypothetical scenario about what the witness would do today with this case because *Wolff* was decided after the petitioner's trial. The court, in its memorandum of decision, concluded that the

*Wolff* standards were adhered to in this case but went further to make specific findings that the canvass as to the petitioner's waiver of counsel was not improper because the trial court had made it clear that the petitioner had the choice between continuing with assigned counsel or proceeding pro se. Moreover, where possible, courts should, as a matter of common-law adjudication, "assure that the body of the law—both common and statutory—remains coherent and consistent." *State* v. *Guess*, 244 Conn. 761, 780, 715 A.2d 643 (1998); *Fahy* v. *Fahy*, 227 Conn. 505, 513–14, 630 A.2d 1328 (1993). The habeas court made findings consistent with the current law but also made specific findings that were not inconsistent with the law at the time of the petitioner's trial.[5]

D

The petitioner also claims that the combined effect of these errors should be considered and should justify granting a new trial. Our Supreme Court rejected a similar argument in *State* v. *Robinson*, 227 Conn. 711, 746–47, 631 A.2d 288 (1993), and, therefore, we reject the petitioner's claim in the present case. As explained in *Robinson*, "[w]e decline to create a new constitutional claim in which the totality of alleged constitutional error is greater than the sum of its parts." (Internal quotation marks omitted.) Id., 747. Thus, because we have found no factual, evidentiary or legal errors, the combined claims cannot give rise to a constitutional violation.

---

[5] The state of the law during the petitioner's 1993 trial was and still is that the petitioner "does not possess a constitutional right to a specifically formulated canvass. His constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the . . . waiver was voluntary and knowing." *State* v. *Webb*, 238 Conn. 389, 429, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000); *State* v. *Gethers*, 193 Conn. 526, 539–40, 480 A.2d 435 (1984).

## III

The petitioner next claims that his sentence is illegal because the waiver of counsel canvass was defective and deprived him of his constitutional rights. Specifically, the petitioner attacks the canvass because there was no discussion that the individual sentences could run consecutively or that the persistent felony offender charges could add additional years to the minimum sentences and because there was no inquiry into the conflict between him and his assigned counsel. The respondent claims that the petitioner has procedurally defaulted on his claim of a defective canvass and that the specific claims as to the canvass were not preserved and are therefore unreviewable. We agree with the respondent.

The following additional facts are important to the resolution of the petitioner's claim. The petitioner filed his petition for a writ of habeas corpus on May 5, 1997. He amended the petition through counsel for the first time on November 20, 1998, and a second time on December 15, 1998. The return was filed December 31, 1998, and the respondent alleged the special defense of procedural default pursuant to Practice Book § 23-30.[6] The petitioner failed to file a reply to the special defense in accordance with Practice Book § 23-31 and never made specific claims of cause and prejudice in order to overcome the default.[7]

---

[6] Practice Book § 23-30 provides: "(a) The respondent shall file a return to the petition setting forth the facts claimed to justify the detention and attaching any commitment order upon which custody is based.

"(b) The return shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief."

[7] Practice Book § 23-31 provides: "(a) If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply.

"(b) The reply shall admit or deny any allegations that the petitioner is not entitled to relief.

"(c) The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default. The reply shall not restate the claims of the petition."

As the United States Supreme Court has noted in specifically adopting the cause and prejudice standard to analyze procedural defaults on direct appeal: "A State's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack. . . . [Such rules] [afford] . . . the opportunity to resolve the issue shortly after trial, while evidence is still available both to assess the defendant's claim and to retry the defendant effectively if he prevails in his appeal. . . . This type of rule promotes not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 134, 629 A.2d 413 (1993), quoting *Murray* v. *Carrier*, 477 U.S. 478, 490–91, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

"[T]his court strongly disfavor[s] collateral attacks upon judgments because such belated litigation undermines the important principle of finality . . . . Therefore, we will review the claims only where the petitioner demonstrates good cause for the failure to preserve a claim at trial and actual prejudice resulting from the alleged constitutional violation. . . .

"Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. . . . Because [c]ause and prejudice must be established conjunctively, we may dispose of this claim if the petitioner fails to meet either prong." (Citations omitted; internal quotation marks omitted.) *Guadalupe* v. *Commissioner of Correction*, 68 Conn. App. 376, 385, 791 A.2d 640, cert. denied, 260 Conn. 913, 796 A.2d 557 (2002).

Our review of the record before the habeas court reveals that the petitioner did not raise his constitutional claims on direct appeal or in his first petition for a writ of habeas corpus. Those claims, therefore, would be subject to the defense of procedural default in the habeas proceedings. See *Fernandez* v. *Commissioner of Correction*, 96 Conn. App. 251, 266, 900 A.2d 54, cert. denied, 280 Conn. 908, 907 A.2d 89 (2006). The habeas court did not address the issue of procedural default in its memorandum of decision. "Where no evidence [of cause and prejudice] has been provided, this court can independently conclude that the petitioner has failed to meet the cause and prejudice test." *Daniels* v. *Warden*, 28 Conn. App. 64, 72, 609 A.2d 1052, cert. denied, 223 Conn. 924, 614 A.2d 820 (1992).

From a review of the record, the petitioner has not overcome his burden to show cause and prejudice in order to overcome a claim of procedural default. For this reason, we will not reach the merits of the petitioner's defective canvass claim. Further, because the petitioner did not raise in the habeas court his specific claims regarding the canvass, they are unreviewable.

IV

We finally turn to the petitioner's claim of ineffective assistance of counsel. The petitioner asserts that the habeas court improperly found that prior habeas and appellate counsel had not rendered ineffective legal assistance during their representation of the petitioner. Specifically, the petitioner argues that his counsel were ineffective for failing to raise the claim of a defective canvass in the petitioner's prior postconviction actions.[8]

---

[8] In the petitioner's brief, he asserts that prior habeas counsel did not testify at the present habeas trial but that if appellate counsel was found to be ineffective, "logically" prior habeas counsel should also be found ineffective. The respondent, however, brought to this court's attention the transcript of prior habeas counsel's testimony, and, therefore, we can review the testimony.

The respondent asserts that the petitioner has failed to meet his burden in order to establish that his appellate and habeas counsel were ineffective. We agree with the respondent.

Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Hill* v. *Commissioner of Correction*, 103 Conn. App. 641, 645–46, 932 A.2d 413, cert. denied, 284 Conn. 925, 933 A.2d 726 (2007).

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse

sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Braham* v. *Commissioner of Correction*, 72 Conn. App. 1, 5–6, 804 A.2d 951, cert. denied, 262 Conn. 906, 810 A.2d 271 (2002).

At the habeas trial, prior counsel was asked about whether they considered the canvass as an appellate issue. One of the petitioner's appellate counsel testified that the matter of the canvass was one of the issues that he had considered in preparing the petitioner's appeal but that he did not consider it of great merit and that there were better issues to raise on appeal. Prior habeas counsel testified that he began work on the case after the petitioner had filed his first habeas petition and, in writing the amended petition, focused mainly on the petitioner's claims and did not recall any egregious mistakes or errors regarding the canvass. The petitioner later offered the testimony of attorney Lori Welch-Rubin as an expert in appellate matters. She testified that in failing to raise the issue of the canvass on

appeal, appellate counsel's actions fell below a reasonable standard.[9]

The habeas court found that the petitioner "failed to establish, by a fair preponderance of the evidence, that appellate counsel's failure to raise the issue of [a] deficient [canvass pursuant to Practice Book § 44-3] on appeal constituted ineffective assistance of counsel. Rather, such failure was a reasonable exercise of counsel's judgment in determining which issues offered the best prospect of success on appeal. Similarly, the petitioner has failed to establish that habeas counsel's . . . failure to raise said issue constituted ineffective assistance of counsel."

As we stated in *Vivo* v. *Commissioner of Correction*, 90 Conn. App. 167, 876 A.2d 1216, cert. denied, 275 Conn. 925, 883 A.2d 1253 (2005), "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible . . . . " (Citation omitted; internal quotation marks omitted.) Id., 172. The habeas court found that appellate counsel did just that. Further, the court appropriately found that the petitioner failed to meet his burden in regard to the prior habeas counsel. Therefore, under *Strickland*, the petitioner failed to show how his post-conviction counsel's actions were unreasonable. See *Strickland* v. *Washington*, supra, 466 U.S. 687.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Welch-Rubin did not testify in regard to prior habeas counsel's involvement in the case.